473 S.E.2d 910

**KOPELMAN AND ASSOCIATES, L.C., a West Virginia corporation, Plaintiff Below, Appellant,**

v.

**Peggy L. COLLINS and Gregory M. Courtright, individually and d/b/a Collins & Courtright, a partnership, Defendants Below, Appellees.**

No. 23183.

Supreme Court of Appeals of West Virginia.

Submitted April 24, 1996.

Decided June 14, 1996.

Andrew F. Workman, Larry G. Kopelman, Kopelman and Associates, L.C., Charleston, for Appellant.

Peggy L. Collins, Gregory M. Courtright, Collins & Courtright, Charleston, for Appellees.

W. Mark Burnette, W. Mark Burnette, L.C., Lewisburg, amicus curiae.

Barry Hill, Weirton, amicus curiae on behalf of the West Virginia Trial Lawyers Association.

CLECKLEY, Justice:

The plaintiff below and appellant herein, Kopelman and Associates, L.C., a West Virginia Corporation, appeals the June 9, 1995, order of the Circuit Court of Kanawha County which granted a motion for judgment on the pleadings filed by the defendants below and appellees herein, Peggy L. Collins and Gregory M. Courtright, individually and dba Collins & Courtright, a partnership. The circuit court ordered the defendants to pay the plaintiff "a sum of money calculated by multiplying the number of attorney hours expended at Plaintiff's [law] firm on [certain contingency fee cases] by $85.00 per hour."

The circuit court also ordered the defendants to reimburse the plaintiff for out-of-pocket expenses incurred in handling those cases "as such reimbursements are received from the clients."[1] On appeal, the plaintiff argues the circuit court erred in determining how the plaintiff should be reimbursed for contingency fee cases for clients who dissolved their relationship with the plaintiff and hired the defendants after the defendants left their employment with the plaintiff. For the following reasons, we find it necessary to reverse the final order and remand this case to the circuit court.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

The defendants are lawyers who worked for the plaintiff for several years. While working for the plaintiff, the standard billable rate for the defendant Peggy L. Collins was $85 per hour. During their employment, the defendants claim they were the only lawyers working for the plaintiff except for the sole owner, Larry G. Kopelman. The defendants further assert over the last two years of their employment with the plaintiff Mr. Kopelman substantially withdrew from legal practice to pursue other interests.

In 1994, the defendants terminated their employment with the plaintiff and created their own firm. Thereafter, approximately ten to fifteen contingency fee clients who had contracts with the plaintiff terminated those relationships and directed their files be sent to the defendants. The defendants state that two of these cases are of significant value. One such case involved a personal injury action where the client had known Peggy L. Collins for many years and "had married her college roommate and second cousin[.]" The defendants maintain the only reason the client came to the plaintiff was because Ms. Collins was working for the plaintiff. In addition, according to the defendants, the client in the other significant case was ready to discharge the plaintiff before the case was

assigned to Ms. Collins. On the other hand, the plaintiff contends Mr. Kopelman has a good reputation in contingency fee cases and the firm was actively engaged in the development of the cases at issue. The plaintiff states: "There was no agreement between the parties regarding fee sharing on cases taken from Kopelman [and] [n]one of the attorney liens were released[.]"

The plaintiff filed suit against the defendants over the division of the fees. On April 7, 1995, after the close of the pleadings but prior to the presentation of substantial evidence, the defendants filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the West Virginia Rules of Civil Procedure. On May 23, 1995, a hearing was held. Thereafter, the defendants drafted an order they believed accurately reflected the substance and conclusions reached at that hearing. The plaintiff allegedly refused to sign the proposed order, so the defendants filed a motion to enter the order at a hearing to be held on June 9, 1995. The plaintiff did not appear at this hearing and, during oral argument to this Court, Mr. Kopelman explained he was unaware the hearing was scheduled.[2] By order entered on June 9, 1995, the circuit court granted the defendants' motion and found the plaintiff was entitled to the reasonable value of services rendered. The circuit court then ordered the defendants to pay the plaintiff $85 per hour for the time the defendants spent working on the cases while employed by the plaintiff and to pay the plaintiff's out-of-pocket expenses from reimbursements received from the clients. The plaintiff appeals this decision.

## II.

### DISCUSSION

■ We review a circuit court's grant of judgment on the pleadings *de novo*. *See* Syl. pt. 1, *Copley v. Mingo County Bd. of Educ.*, 195 W.Va. 480, 466 S.E.2d 139 (1995). As

---

**1.** In its findings of fact, the circuit court stated: "It is undisputed that the contingency fee contracts of said clients contained provisions for reimbursement of out-of-pocket expenses of Plaintiff whether or not any amount of money was recovered[.]"

**2.** In the record, there is a copy of the notice of hearing filed with the circuit court on May 26, 1995.

discussed more fully below, the standard of review on this motion virtually is identical to a motion to dismiss under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure.

This case involves how a law firm in a contingency fee case should be compensated when lawyers from that firm leave and take contingency fee clients with them. The plaintiff argues the circuit court erred when it determined the reasonable value of services rendered could be reached by totaling the number of hours the defendants worked on the cases while employed by the plaintiff and multiplying that figure by Ms. Collins' standard billable rate of $85 per hour. Instead, the plaintiff argues there should be an equitable division of contingency fees based upon the ratio of time spent on the cases by each firm. For reasons stated below, we now reverse the final order and remand the case to the circuit court.

## A.

### Judgment on the Pleadings

■ Initially, we must determine the nature of the motion and ruling presented to us for review. The motion was characterized as a judgment on the pleadings pursuant to Rule 12(c) of the West Virginia Rules of Civil Procedure,[3] which we will uphold only if it appears beyond doubt that the plaintiff can prove no set of facts that will support its claim for the requested relief. *See Copley,* 195 W.Va. at 484, 466 S.E.2d at 143, 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* (Wright & Miller) § 1368 at 517–18 (2d ed. 1990).

■ In *Copley,* we held a Rule 12(c) dismissal is analogous to one made under Rule 12(b)(6) (motion to dismiss for failure to state a claim) of the Rules of Civil Procedure.[4] Dismissal under either rule for fail-

ure to state a claim or defense is appropriate only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations contained within the pleadings. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957). We read a pleading liberally and accept as true the well-pleaded allegations of the complaint and the inferences that reasonably may be drawn from the allegations. *See State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.,* 194 W.Va. 770, 776, 461 S.E.2d 516, 522 (1995). Conversely, although the plaintiff enjoys the benefit of all inferences that plausibly can be drawn from the pleadings, a party's legal conclusions, opinions, or unwarranted averments of fact will not be deemed admitted. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59, 65 (1984).

What is clear about this case is that matters that will control and determine how contingency fees are to be allocated between disgruntled and former law associates involve, for the most part, a highly fact-specific inquiry. It will be a rare case in which the parties' differences will be resolved appropriately on the pleadings alone. Indeed, the circuit court in this case could have granted judgment on the pleadings only if, after the close of the pleadings, no material fact remained in dispute and the defendants were entitled to judgment as a matter of law. In cases like the present one, resort to material outside the pleadings is almost a necessity, and, in fact, this case presents a perfect example of this point.

■ The parties concede, and the record supports, that in making its ruling the circuit court considered matters outside the pleadings.[5] In fact, the parties similarly have

---

**3.** Rule 12(c) of the Rules of Civil Procedure provides:

"*Motion for judgment on the pleadings.*—After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to pres-

ent all material made pertinent to such a motion by Rule 56."

**4.** Regardless of assertions in an answer, a defendant may not succeed on a Rule 12(b)(6) motion if there are allegations in the pleadings which, if proved, will provide a basis for recovery.

**5.** The defendants concede the circuit court treated their motion for judgment on the pleadings as a motion for summary judgment and decided the basic question of the entire case.

directed us to evidence outside the pleadings on this appeal. Under Rule 12(c), if "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment[.]" *See also Carter v. Stanton*, 405 U.S. 669, 671, 92 S.Ct. 1232, 1234, 31 L.Ed.2d 569, 572 (1972). Indeed, the circuit court in its order made specific reference to "matters outside the pleadings," and a reading of the order indicates the circuit court most definitely did consider such matters in arriving at its findings and conclusions. Clearly, then, the circuit court, though it did not say so explicitly, was treating the motion for judgment on the pleadings as one for summary judgment. We find the motion is characterized more accurately as a motion for summary judgment, and we will treat it as such on appeal.[6]

When a court determines it must treat a motion for judgment on the pleadings as a motion for summary judgment under Rule 56, the parties are entitled to notice and a reasonable opportunity to provide additional material before the court determines the outcome. *See Chapman v. Kane Transfer Co., Inc.*, 160 W.Va. 530, 236 S.E.2d 207 (1977). In this general regard, see 5A Wright & Miller, *supra* § 1366 at 501–06, where the following appears:

"As soon as a motion [for judgment on the pleadings under Rule 12(c)] is converted into a motion for summary judgment, the requirements of Rule 56 become operable. It is important that the court give the parties notice of the changed status of the motion and a 'reasonable opportunity to present all material made pertinent to such a motion by Rule 56.' In this way no one will be taken by surprise by the conversion. However, there is authority for the notion that the absence of formal notice will be excused when it is harmless or the parties were otherwise apprised of the conversion. Once the proceeding becomes one for summary judgment, the moving party's burden changes and he [or she] is obliged to demonstrate that there exists no genuine issue as to any material fact and that he [or she] is entitled to a judgment as a matter of law." (Footnotes omitted).

We hold that to treat a motion for judgment on the pleadings as a motion for summary judgment without permitting the adverse party a reasonable opportunity to submit pertinent material is error. Therefore, the next question we must address is whether the circuit court complied with the requirements of Rule 12(c) and Rule 56 of the West Virginia Rules of Civil Procedure concerning summary judgments.

At oral argument, the plaintiff claimed it was denied a reasonable opportunity to introduce material responsive to a motion for summary judgment because the circuit court made the conversion without giving notice. The plaintiff does not allege it did not have enough time to file supplementary material, and, in fact, the record reveals that approximately nine weeks passed between service of the Rule 12(c) motion and the entry of judgment. Instead, the plaintiff contends it never knew nor considered what was being heard was a motion for summary judgment and, therefore, it believed it was not required to make a record on the motion.

Rule 56(c) adds: "The motion shall be served at least 10 days before the time fixed for the hearing." Although we are not provided with a trial transcript, at oral argument, the defendants contended the plaintiff submitted the facts it relied upon to the circuit court and it was this information that formed the basis for the court's decision. It seems clear to us that if facts are submitted orally to a court, the court must proceed under Rule 56 unless the court decides to exclude from its consideration this extrinsic information. *See Dunn v. Consolidated Coal Co.*, 180 W.Va. 681, 379 S.E.2d 485 (1989). It seems logical to read into the ten-day requirement of Rule 56(c) the "reasonable opportunity" to file supplementary materials language of Rule 12(c). These requirements have been met even if we compute the ten-day period from the date of the oral submission of the extrinsic facts. Of course, it reasonably could be argued there should be an additional ten-days notice of the fact a circuit court intends to convert the motion

6. As we suggested in note 4 of *Murphy v. Smallridge*, 196 W.Va. 35, 36, 468 S.E.2d 167, 168 (1996), "[w]e are not bound by the label employed below, and we will treat the dismissal as one made pursuant to" the most appropriate rule.

for judgment on the pleadings into a motion for summary judgment. Certainly, it is a better and safer practice for a circuit court to give notice of its intention to treat a Rule 12(c) motion as one for summary judgment and failure to do so may require reversal under certain circumstances.

The "reasonable opportunity" language of Rule 12(c) is designed to prevent unfair surprise to the parties. The defendants contend the plaintiff is hardly in a position to claim it was surprised because it made no effort to object to the use of extrinsic information and did not indicate it wanted to submit any further information other than what was conveyed to the circuit court at the hearing. Under these circumstances, the defendants suggest to require the circuit court to provide additional notice would have been superfluous in that notice to the party of what it was doing would merely have informed the plaintiff of what the plaintiff already knew or should have known. The defendants further claim that the plaintiff did not bother to appear at the final hearing at which the order was entered. To this extent, they suggest there was a waiver of any right emanating from Rule 56.

The defendants argument would be more appealing if we were dealing with the submission of affidavits, formal admissions, depositions, or answers to interrogatories. *See* W.Va.R.Civ.P 56(c). Indeed, the case of *Sims v. Mercy Hospital of Monroe,* 451 F.2d 171 (6th Cir.1971), appears to be directly on point because it too did not deal with the type of submissions required in Rule 56(c). In *Sims,* the trial judge relied upon an oral statement made by the attorney for the plaintiff at oral argument on a Rule 12(b)(6) motion and without notice to anyone entered summary judgment for the defendant. On appeal, the reviewing court honored the plaintiff's argument that he was taken by surprise by the conversion of the motion.

■ Whether notice of the conversion is required depends on the facts and circumstances of each case. Where one party is likely to be surprised by the proceedings, notice is required. We find the record brought up on appeal is insufficient for us to make a definitive ruling on this issue because the plaintiff failed to supply us with the entire record of all the proceedings. Never-

theless, we find from the facts of this case that summary judgment was inappropriate on other grounds. We, therefore, proceed to the merits of the appeal applying summary judgment standards.

### B.

*The Measure of Reasonable Value of Services Rendered*

Due to the fact the circuit court considered matters outside the pleadings, we must review the record *de novo* under summary judgment standards. Therefore, the circuit court's ruling should be affirmed if it is clear from the record on appeal that there are no genuine issues of fact to be tried *and the defendants are entitled to judgment as a matter of law.* In *Hanlon v. Chambers,* 195 W.Va. 99, 106, 464 S.E.2d 741, 748 (1995), we stated that "[e]ven '[i]f there is no genuine issue of material fact in dispute, ... we [must] next determine if the substantive law was correctly applied by the ... [circuit] court.'" *Quoting Hirase–Doi v. U.S. West Communications, Inc.,* 61 F.3d 777, 781 (10th Cir.1995). We hold that the defendants failed to proffer sufficient evidence to establish there are no genuine issues of material fact. *See United States Fidelity & Guar. Co. v. Eades,* 150 W.Va. 238, 144 S.E.2d 703 (1965) (if the matters submitted to a circuit court outside the pleadings contain issues of fact, it cannot be disposed of by summary judgment). We further find there was no legal basis for entering summary judgment as a matter of law because the circuit court failed to consider some important elements of the plaintiff's claim. *See Aetna Casualty & Surety Co. v. Federal Ins. Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963) (entitlement to summary judgment must be established with such clarity as to leave no room for controversy).

■ Under West Virginia law, whether and how to compensate a lawyer when a contingent fee contract is prematurely terminated depends on whether the lawyer was discharged, withdrew with the consent of the client, or withdrew voluntarily without consent. A lawyer discharged by the client without cause can recover on the contingent

fee contract or in *quantum meruit*.[7] *Clayton v. Martin*, 108 W.Va. 571, 151 S.E. 855 (1930); *Polsley & Son v. Anderson*, 7 W.Va. 202, 23 Am.Rep. 613 (1874). A lawyer discharged with cause can recover in *quantum meruit* for services rendered up to the time of discharge. When both parties assent to the contract's abandonment, the lawyer can recover for the reasonable value of the services rendered. *Hardman v. Snyder*, 183 W.Va. 34, 35–36, 393 S.E.2d 672, 673–74 (1990).

The majority position in this country is when " 'an attorney without just cause, abandons his client before the proceeding for which he was retained has been conducted to its termination, or if such attorney commits a material breach of his contract of employment, he thereby forfeits all right to compensation.' " *Royden v. Ardoin*, 160 Tex. 338, 341, 331 S.W.2d 206, 209 (1960), *quoting Beaumont v. J.H. Hamlen & Son*, 190 Ark. 630, 632, 81 S.W.2d 24, 25 (1935). (Other citations omitted). However, a lawyer who withdraws from a case without good cause or justification may receive compensation if the withdrawal results in no prejudice

to the client. Syl. pt. 2, *May v. Seibert*, 164 W.Va. 673, 264 S.E.2d 643 (1980)[8]; Wade R. Habeeb, Annotation, *Circumstances under which Attorney Retains Right to Compensation Notwithstanding Voluntary Withdrawal from Case*, 88 A.L.R.3d 246 (1978 & Supp. 1995) (describing cases from various jurisdictions in which lawyers have retained the right to compensation after withdrawal). Whether just cause exists depends on the facts and circumstances of each case. *Matheny v. Farley*, 66 W.Va. 680, 682–83, 66 S.E. 1060, 1061 (1910). Of course, if a lawyer withdraws with just cause, there can be no question that he or she may be compensated in *quantum meruit*.

We have long held a lawyer is entitled to the reasonable value of his or her services. As far back as 1874, this Court said in *Polsley, supra*, that lawyers who are constructively discharged[9] from a case "are not necessarily entitled ... to recover the whole amount of the contingent fee therein specified; but for breach of said contract, by [the client], may recover such damages, by way of compensation for their time, labor and attention, as these are reasonably worth[.]" Syl. pt. 2, in part.[10] In a converse situation, we

---

**7.** There is nothing in the law or our public policy to preclude a lawyer and client from privately entering into a contingent fee agreement. *See Venegas v. Mitchell*, 495 U.S. 82, 90, 110 S.Ct. 1679, 1684, 109 L.Ed.2d 74, 84 (1990) (the "reasonable attorney's fee" policy "does not interfere with the enforceability of a contingent-fee contract"). Although courts interpolate the word "reasonable" into clauses of this kind, the best guarantee of reasonableness is willingness to pay which usually is determined by looking at the contract. To be specific, courts in West Virginia will uphold contingency fee arrangements voluntarily entered into by the parties as long as they are not excessive, overreaching, and do not take inequitable advantage of a client. However, recovery on a contract is permitted only when the contract explicitly provides for the type of termination involved in the particular case.

Otherwise, West Virginia, like the majority of jurisdictions, limits the discharged attorney's recovery to *quantum meruit* (or to the lesser of *quantum meruit* and the contract price), refusing to apply normal contract rules to an attorney-client relationship because of the special trust and confidence that must exist between attorney and client. *See Hardman v. Snyder*, 183 W.Va. at 35–36, 393 S.E.2d at 673–74, *quoting Covington v. Rhodes*, 38 N.C.App. 61, 65, 247 S.E.2d 305, 308 (1978). The majority of jurisdictions reason that allowing recovery on a contract impinges on a client's absolute right to select the lawyer of his or her choice by forcing the client to pay double

fees, one to the discharged lawyer and one to the new lawyer. These jurisdictions typically imply a term into the contingency contract allowing discharge of a lawyer at will so that the discharge is not considered a breach and does not give rise to contract damages. *See, e.g., Fracasse v. Brent*, 6 Cal.3d 784, 100 Cal.Rptr. 385, 494 P.2d 9 (1972); *Martin v. Camp*, 219 N.Y. 170, 114 N.E. 46 (1916).

**8.** Compensation for the good faith work of the withdrawing lawyer "should be assessed in relation to the time and effort required by both lawyers toward the complete litigation process; and assessed from the perspective of the result ultimately obtained compared with the intermediate accomplishments by the withdrawing counsel." 164 W.Va. at 682, 264 S.E.2d at 647–48. However, we also said the amount of compensation awarded a lawyer will need to be determined on a case-by-case basis because it is difficult to draw a standard to apply to all factual circumstances. 164 W.Va. at 682, 264 S.E.2d at 648.

**9.** In *Polsley*, the lawyers were prevented from bringing the case to a final decision because the client got the suit dismissed without the lawyers' consent.

**10.** See also W.Va.Code, 30–2–15 (1923), which provides: "An attorney shall be entitled for his

also have stated that a lawyer who terminates his or her relationship with a client for "sufficient cause" may "recover what his [or her] services already rendered are reasonably worth." Syl. pt. 1, in part, *Matheny, supra.*

We reaffirmed our holding in *Polsley* in *Clayton, supra.* In *Clayton,* we said if a contract is broken by no fault of the lawyer, the lawyer *"may recover damages for breach,* or on *quantum meruit* for the reasonable value of his [or her] services." [11] 108 W.Va. at 574–75, 151 S.E. at 856. (Emphasis added; citation omitted). As to contingency fee cases, we specifically held in the Syllabus:

"Where an attorney has been discharged, without fault on his part, from further services in a suit just begun by him under a contract for payment contingent upon successful prosecution of the suit, his measure of damages is not the contingent fee agreed upon, but the value of his services rendered; and in the absence of evidence of the reasonable value of such services, no recovery can be had." [12]

We are required to assume the facts most favorable to the nonmovant party. *See Farley v. Sartin,* 195 W.Va. 671, 673, 466 S.E.2d 522, 524 (1995) ("[a]s a result of this case being decided on a motion for summary judgment, we appropriately make certain factual assumptions in order to frame the legal issues"). Thus, in the absence of contrary evidence, we will assume that the termination in this case resulted from no fault of the plaintiff. The fundamental issue in this case, then, is whether the reasonable value of services rendered by a discharged law firm in a contingency fee case can be compensated adequately by merely multiplying the number of hours spent on the case by a billable hourly rate. As for the quantum of fees,

appellate review is deferential. *Cf. Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990); *State ex rel. Chafin v. Mingo County Comm'n,* 189 W.Va. 680, 434 S.E.2d 40 (1993). Here, however, upon review, we find we have not given clear directives on how a court is to determine what is "reasonable value" in this type of situation. We must decide these issues *de novo* because the disposition of this appeal requires us to determine issues of law.

Although the method of multiplying the number of hours spent on the case by a billable hourly rate is perhaps the easiest and most clear-cut way to resolve disputes over compensation, it does not necessarily produce a fair and just result to the parties. Indeed, this method could result in either under- or over-compensation to the discharged law firm. Other factors must be considered in conjunction with the amount of hours spent on a case to determine what is the reasonable value of services rendered.

In *Aetna Casualty & Surety Co. v. Pitrolo,* 176 W.Va. 190, 342 S.E.2d 156 (1986), we addressed an analogous issue of what constitutes a reasonable attorney fee in a third-party action. In *Aetna,* an insured hired private counsel to defend him in three separate civil actions brought against him as the result of an automobile accident. The insured hired private counsel to represent him because his insurance company denied coverage. Private counsel represented the insured in preliminary matters before the suits went to trial. Thereafter, a jury found in a declaratory judgment action that the insurance company had a duty to defend the insured. 176 W.Va. at 192, 342 S.E.2d at 158.

---

services as such to such sums as he may contract for with the party for whom the service is rendered; and, in the absence of such contract, he may recover of such party what his services were reasonably worth."

**11.** *Quantum meruit* "means 'as much as deserved,' and measures recovery under implied contract to pay compensation as reasonable value of services rendered." *Black's Law Dictionary* 1243 (6th ed. 1990), in part. (Citation omitted). *See Stafford v. Bishop,* 98 W.Va. 625, 127 S.E. 501 (1925) (lists factors to be considered in *quantum meruit* determinations).

**12.** Of course, if the contract is specific as to the method and measure of fee payment, the contract itself is controlling. In most contingency fee arrangements, a lawyer's fee is based upon a percentage of recovery which applies only to successful completion of the work. In cases where a relationship is terminated earlier than the completion of the job, unless the contract specifically provides otherwise, there is no occasion to consider payment under the contingency fee arrangement.

To determine the reasonableness of attorney's fees the insured was entitled to collect as a result of hiring private counsel, we stated in *Aetna* a court cannot rely solely on the fee arrangement formed between the lawyer and the client. 176 W.Va. at 195, 342 S.E.2d at 161. Instead, we listed twelve other factors which should be considered in ascertaining whether the fees are reasonable. In Syllabus Point 4 of *Aetna*, we held:

"Where attorney's fees are sought against a third party, the test of what should be considered a reasonable fee is determined not solely by the fee arrangement between the attorney and his client. The reasonableness of attorney's fees is generally based on broader factors such as: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases."

*See also* Syl. pt. 3, *Statler v. Dodson*, 195 W.Va. 646, 466 S.E.2d 497 (1995); Syl. pt. 2, *State ex rel. Chafin, supra*. With a few differences, these factors are substantially similar to those now contained in Rule 1.5(a) of the West Virginia Rules of Professional Conduct which sets forth what factors are to be considered in assessing a reasonable fee.

In *Aetna*, we also compared these factors to those summarized in Syllabus Point 3 of *Stafford v. Bishop*, 98 W.Va. 625, 127 S.E. 501 (1925), where we were asked to determine the reasonableness of attorney's fees when an attorney and a client did not have a fixed fee agreement. In Syllabus Point 3 of *Stafford*, we said:

"In determining the value of an attorney's services upon a *quantum meruit*, a jury may take into consideration evidence as to the attorney's ability, skill, experience, diligence, and standing in his profession, as well as the nature and extent of

the services performed, the difficulties encountered, the responsibility assumed, the amount involved, the physical and mental labor expended, the results achieved, their benefit to the client, and the usual and customary charges for like services in the same vicinity."

In light of *Aetna* and *Stafford*, it is clear we have recognized there are a variety of factors beyond the amount of hours spent on a case which should be taken into account when calculating attorney's fees. We see no reason to divert from this view in the present case.

Other jurisdictions have reached a similar result. We particularly are persuaded by the discussion in *La Mantia v. Durst*, 234 N.J.Super. 534, 561 A.2d 275 (1989), *cert. denied*, 118 N.J. 181, 570 A.2d 950 (1989). In *La Mantia*, the Superior Court of New Jersey was presented with a situation comparable to the one at bar. In that case, a client signed a contingency fee agreement with a law firm. Thereafter, the case was assigned to one of the partners, and the partner spent a considerable amount of time on the case while at the firm. Later, the partner left the firm to create a new one and took the client's case with him. The case went to trial resulting in a $2.1 million verdict in favor of the plaintiff. 234 N.J.Super. at 536–37, 561 A.2d at 276.

The question presented to the New Jersey court was how the contingency fee should be divided between the two firms. The court determined the proper measure of compensation to the first firm rested upon the principles of *quantum meruit*. 234 N.J.Super. at 537, 561 A.2d at 276. The court also recognized, however, the equitable principles of *quantum meruit* do not lend themselves to hard and fast rules. 234 N.J.Super. at 539–40, 561 A.2d at 277. Therefore, the court gave "guidelines" to assist trial courts in their determinations. These "guidelines" included:

"Trial courts should consider the length of time each of the firms spent on the case relative to the total amount of time expended to conclude the client's case.... The quality of that representation is also relevant.... Therefore, the result of each

firm's efforts as well as the reason the client changed attorneys are factors to be considered.... Viability of the claim at transfer also bears upon the value of a former firm's contribution—if the case was initially speculative but concrete by the time the cause of action moved to the second firm, that factor should bear upon the distribution.... The amount of the recovery realized in the underlying lawsuit also impacts upon the *quantum meruit* valuation.... It is also necessary to examine any pre-existing partnership agreements between the members of the firms who now compete for a percentage of the contingency fee.... Where one attorney 'jumps ship' and takes the client with him, his relationship with the former firm will impact upon the distribution of the fee." [13] 234 N.J.Super. at 540–41, 561 A.2d at 278. (Citations and footnotes omitted). The court concluded the trial court erred by finding *quantum meruit* could be reached by multiplying the number of hours spent by an hourly rate.

In reaching this conclusion, the court stated the initial firm should not be denied "from equitably realizing fruits of its reasonable expectancy in the contingent fee." 234 N.J.Super. at 543, 561 A.2d at 279. Other factors suggested by the court to consider, "in addition to recognition of the factor of initial attraction of the client," include "the quality of the firm's initial investment of time, skill and funds in investigation, construction of pleadings, discovery, choice of experts, research and those other foundational services which shape the ultimate result, good or bad, of every lawsuit." 234 N.J.Super. at 543, 561 A.2d at 279.[14]

In another case involving what method should be used to calculate the amount due on an attorney's lien, the Court of Appeals of Minnesota held in *Ashford v. Interstate Trucking Corporation of America, Inc.*, 524 N.W.2d 500, 503 (Minn.Ct.App.1994): "The concept of quantum meruit does not require that attorneys be paid on an hourly basis. Such a rigid rule would not allow due consideration to the relevant circumstances surrounding either a discharge or a withdrawal." Instead, the court relied upon its recent decision in *In re L–tryptophan Cases*, 518 N.W.2d 616 (Minn.Ct.App.1994), to state a variety of factors must be considered.[15] In *In re L–tryptophan Cases*, the court cited *La Mantia* and concluded in its Syllabus:

> "In a contingency fee case, where attorneys employed by one firm leave the firm and take clients, and subsequently obtain a recovery, a district court, in allocating attorney fees, should consider the length of time each firm spent on the case, the proportion of funds invested by each firm, the quality of representation, the result of each firm's efforts, the reason the client changed firms, the viability of the claim at transfer, the amount of recovery realized, and any pre-existing partnership agreements."

After careful and due consideration of the foregoing cases and the arguments made by the plaintiff, the defendants, and the amici curiae, we hold a circuit court must look at more than hourly reimbursement in making a *quantum meruit* determination. Although the amount of time spent by each respective firm is an important consideration in a contingency fee case where lawyers employed by one firm leave that firm and take a client with them and no contract exists governing how the fees are to be divided, a circuit court also must consider retrospectively upon the conclusion of the case:

---

**13.** We find unavailing the defendants' attempt to factually distinguish *La Mantia* from the present case because the lawyer who left the firm in *La Mantia* was a partner in the firm who, unlike the defendants, "was being compensated by them through the efforts of all of the firm's attorneys." 234 N.J.Super. at 542, 561 A.2d at 279. Although it may be a factor to consider in determining *quantum meruit*, it does not diminish the relevancy of the underlying issue.

**14.** After discussing the criteria a trial court should consider, the *La Mantia* court reversed and remanded the case "for a *quantum meruit* percentage distribution of the attorneys' fee consistent with [its] opinion." 234 N.J.Super. at 544, 561 A.2d at 280. We disagree with *La Mantia* to the extent it may be interpreted to say *quantum meruit* may be obtained merely by a ratio of time distribution of the attorneys' fees.

**15.** *Ashford* disagreed with *In re L–tryptophan Cases* to the extent it held discharged attorneys in contingency fee cases must be compensated on an hourly basis. 524 N.W.2d at 503.

(1) the relative risks assumed by each firm; (2) the frequency and complexity of any difficulties encountered by each firm; (3) the proportion of funds invested and other contributions made by each firm; (4) the quality of representation; (5) the degree of skill needed to achieve success; (6) the result of each firm's efforts; (7) the reason the client changed firms; (8) the viability of the claim at transfer; and (9) the amount of recovery realized. This list is not exhaustive, and, in addition to awarding out-of-pocket expenses, a circuit court may consider other factors as warranted by the circumstances. In making its determination, however, a circuit court must make clear on the record its reasons for awarding a certain amount. *See Aetna, supra.* We leave such a determination to the sound discretion of the circuit court, and we will not disturb such a ruling unless we find the circuit court abused its discretion. *See Chafin,* 189 W.Va. at 680, 434 S.E.2d at 44.

### III.

### CONCLUSION

For the foregoing reasons, we reverse the final order of the Circuit Court of Kanawha County and remand this case for further proceedings consistent with this opinion.

Reversed and remanded.