# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

Spring 2024 Term

_____

No. 23-ICA-118
_____

FILED

**May 29, 2024**

released at 3:00 p.m.
ASHLEY N. DEEM, DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

MELISSA K. BOND
Plaintiff Below, Petitioner,

v.

UNITED PHYSICIANS CARE, INC. d/b/a SALEM FAMILY HEALTHCARE,
Defendant Below, Respondent.

_____

Appeal from the Circuit Court of Harrison County
Honorable Christopher McCarthy, Judge
No. CC-17-2022-C-176

REVERSED & REMANDED
_____

Submitted: February 7, 2024
Filed: May 29, 2024

Erika Klie Kolenich, Esq.
Klie Law Offices, PLLC
Buckhannon, West Virginia
Counsel for Petitioner

Brian M. Peterson, Esq.
Jacqueline L. Sikora, Esq.
West Virginia United Health System,
Inc.
Morgantown, West Virginia
Counsel for Respondent

CHIEF JUDGE SCARR delivered the Opinion of the Court.

SCARR, CHIEF JUDGE:

Petitioner Melissa K. Bond ("Ms. Bond") appeals the February 27, 2023, order of the Harrison County Circuit Court, which granted Respondent's, United Physician's Care, Inc., d/b/a Salem Family Healthcare ("Salem") motion to dismiss. In that order, the circuit court held that Salem was entitled to complete immunity under the COVID-19 Jobs Protection Act, West Virginia Code § 55-19-1, *et seq.* (2021) ("COVID-19 Act"). The court held that Ms. Bond's claims arose due to "'a natural, direct, and uninterrupted consequence of' [Salem's] implementation of 'policies and procedures designed to prevent or minimize the spread of COVID-19.'"

For the following reasons, this Court reverses the Circuit Court of Harrison County's order dated February 27, 2023, and remands for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Ms. Bond was hired by Salem as a medical assistant on June 27, 2016. In 2021, Salem implemented a "COVID-19 Vaccination Program" requiring its employees to either show proof of having received the vaccination against COVID-19 or to apply for and receive a medical or religious exemption. The deadline for doing so was March 15, 2022. On September 3, 2021, Ms. Bond sought a medical exemption from Salem and filled

1

out a form with the assistance of her doctor, Paul Davis, M.D., who indicated that Ms. Bond had experienced negative reactions to vaccines in the past.

In October of 2021, Salem denied Ms. Bond's request for a medical exemption. Ms. Bond submitted an appeal, which was also signed by Dr. Davis, on October 11, 2021. Salem denied the appeal on February 11, 2022. Ms. Bond did not receive the COVID-19 vaccination and, following the March 15, 2022, deadline, she received counseling on her failure to comply with the vaccination policy. On March 23, 2022, Salem issued an Employee Corrective Action Form, a final written warning for Ms. Bond's noncompliance with the vaccination policy. Thereafter, on March 29, 2022, Salem terminated Ms. Bond's employment for her failure to receive the COVID-19 vaccination.

Following Ms. Bond's termination, she filed a civil action in the Circuit Court of Harrison County asserting two claims under the West Virginia Human Rights Act: (1) disability discrimination, and (2) failure to accommodate, both of which were based upon her claimed disability of adverse reactions to vaccinations. Specifically, Ms. Bond alleged that she suffered from prior adverse reactions to vaccinations which led to being hospitalized at times and affected her ability to work. Ms. Bond alleged that such adverse reactions were disabilities and that Salem had actual and/or constructive knowledge of these disabilities. Ms. Bond alleged that Salem treated her in a disparate manner based, at least in part, upon her disability and unlawfully terminated her on that basis. Ms. Bond claimed that Salem's discrimination violated the West Virginia Human Rights Act and that,

2

as a direct and proximate result of Salem's actions, she suffered damages including back pay, front pay, humiliation, mental anguish, professional embarrassment, and emotional distress. Ms. Bond also claimed that Salem failed to provide her with reasonable accommodations and failed to have proper policies and/or procedures in place regarding employees with disabilities and evaluation of their requests for accommodations. Lastly, she claimed that Salem's actions were willful, wanton, malicious and/or reckless, and in reckless disregard of her civil rights.

Salem moved to dismiss the complaint for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure. Salem asserted that it was entitled to immunity under the COVID-19 Act, which it claimed precluded Ms. Bond's West Virginia Human Rights Act claims entirely.

By order dated February 27, 2023, the circuit court granted Salem's motion to dismiss, finding that Salem was entitled to complete immunity under the COVID-19 Act. The circuit court noted that one of the act's primary purposes is to "[e]liminate the liability of the citizens of West Virginia and all persons including individuals, health care providers, health care facilities, institutions of higher education, businesses, manufacturers, and all persons whomsoever, and to preclude all suits and claims against any persons for loss, damages, personal injuries, or death arising from COVID-19." *See* W. Va. Code § 55-19-2(b)(1). According to the circuit court, the Legislature provided broad immunity to healthcare workers such as Salem against,

3

any act from which loss, damage, physical injury, or death is caused by a natural, direct, and uninterrupted consequence of the actual, alleged, or possible exposure to, or contraction of, COVID-19, including services, treatment, or other actions in response to COVID-19, and without which such loss, damage, physical injury, or death would not have occurred, including, but not limited to: . . . Implementing policies and procedures designed to prevent or minimize the spread of COVID-19[.]

W. Va. Code § 55-19-3(1)(A). Moreover,

[n]otwithstanding any law to the contrary, except as provided by this article, there is no claim against any person, essential business, business, entity, health care facility, health care provider, first responder, or volunteer for loss, damage, physical injury, or death arising from COVID-19, from COVID-19 care, or from impacted care.

W. Va. Code § 55-19-4. The circuit court found that Salem met all the required elements for immunity under the COVID-19 Act. The circuit court found that Ms. Bond's claims arise due to "a natural, direct, and uninterrupted consequence of" Salem's implementation of "policies and procedures designed to prevent or minimize the spread of COVID-19." Although Ms. Bond attempted to frame her case as a disability discrimination claim under the West Virginia Human Rights Act, the purpose of her suit was to recover damages for loss of employment as a direct result of Salem's COVID-19 Vaccination Program, which the circuit court found was expressly prohibited by the COVID-19 Act. Ms. Bond now appeals the circuit court's order granting Salem's motion to dismiss.[1]

---

[1] Rule 20 oral argument was held before this Court on February 7, 2024, with all parties appearing in person.

## II. STANDARD OF REVIEW

The Supreme Court of Appeals of West Virginia ("SCAWV") has held that "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." *Young v. State*, 241 W. Va. 489, 491, 826 S.E.2d 346, 348 (2019). When reviewing a circuit court's order granting a motion to dismiss, this Court applies a *de novo* standard of review. *Savarese v. Allstate Ins. Co.*, 223 W. Va. 119, 123, 672 S.E.2d 255, 259 (2008). On appeal of a dismissal based on granting a motion pursuant to West Virginia Rules of Civil Procedure 12(b)(6), the allegations of the complaint must be taken as true. Syl. Pt. 1, *Wiggins v. Eastern Associated Coal Corp.*, 178 W. Va. 63, 357 S.E.2d 745 (1987).

Further, because this Court must decide whether the circuit court was correct in applying the COVID-19 Act to this matter, our review is further guided by the SCAWV recognition in syllabus point one of *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995), that "[w]here the issue on appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review."

In addition, with respect to questions of immunity,

[t]he ultimate determination of whether qualified or statutory immunity bars a civil action is one of law for the court to determine. Therefore, unless there is a bona fide dispute as to the foundational or historical facts that underlie the immunity

5

> determination, the ultimate questions of statutory or qualified immunity are ripe for summary disposition.

*Burke v. Wetzel County Commission*, 240 W. Va 709, 718, 815 S.E.2d 520, 529 (2018) (citation omitted). With these standards in mind, we proceed to address the parties' arguments.

### III. DISCUSSION

On appeal, Ms. Bond asserts three assignments of error to the circuit court's decision. [2] However, because this Court finds Ms. Bond's second assignment of error to be dispositive, we decline to address her remaining assignment of error.[3] First, Ms. Bond asserts that the circuit court erred by interpreting the COVID-19 Act to provide immunity for all claims arising from COVID-19. Ms. Bond argues that the Act was only meant to protect against suits that were arising as a result of would-be plaintiffs contracting or being exposed to COVID-19 while in the business or medical facility; and that the Act was meant to exclude suits for general negligence related to COVID-19, but not for claims where the cause of action arises from another statute, such as the West Virginia Human Rights Act.

---

[2] We have reordered Ms. Bond's assignments of error to accord to our analysis. *See, e.g., Harlow v. E. Elec., LLC*, 245 W. Va. 188, 195 n.25, 858 S.E.2d 445, 452 n.25 (2021).

[3] Ms. Bond further argues that the circuit court erred by considering facts that were outside of the complaint.

In response, Salem argues that the circuit court correctly found that Ms. Bond's claims against Salem, all of which arise from the application of its COVID-19 Vaccination Program, fall squarely within the Act's scope of immunities. Salem asserts that one of the COVID-19 Act's primary purposes is to "preclude all suits and claims against any persons for loss, damages, personal injuries, or death arising from COVID-19." W. Va. Code § 55-19-2(b)(1) (2021). Salem argues that to carry out its stated purpose, the Legislature enacted a broad immunity provision under West Virginia Code § 55-19-4, which states that "there is no claim against any person,…[or] health care provider…for loss, damage, physical injury, or death arising from COVID-19."[4] W. Va. Code § 55-19-4. "Arising from COVID-19" is defined, in part, as "any act from which loss, damage, physical injury, or death is caused by a natural, direct, and uninterrupted consequence of the actual, alleged, or possible exposure to, or contraction of, COVID-19" which includes "implementing policies and procedures designed to prevent or minimize the spread of COVID-19." W. Va. Code § 55-19-3(1)(A). Therefore, Salem argues because Ms. Bond's claim is centered around Salem's implementation and enforcement of its COVID-19 policies, Salem is immune for its actions under the COVID-19 Act. We agree, insofar as it relates to this initial immunity conclusion; however, for the reasons mentioned below we reverse and remand this case back to the circuit court for further analysis consistent with this opinion.

---

[4] There is no dispute that Salem, as a corporation engaged in health care, is both a "person" as defined by West Virginia Code § 55-19-3(11), and a "health care provider" as defined by West Virginia Code § 55-19-3(9).

The interpretation of the COVID-19 Act is an issue of first impression for this State. Because our analysis requires this Court to reconcile the meaning of the COVID-19 Act, West Virginia Code § 55-19-1 *et seq.*, we must attempt to ascertain the intent of the Legislature. *See Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975) ("The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature."). "When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case[,] it is the duty of the courts not to construe but to apply the statute." Syl. Pt. 3, *Nicewarner v. City of Morgantown*, 249 W. Va. 120, 894 S.E.2d 902 (2023) (citation omitted); *see Crockett v. Andrews*, 153 W. Va. 714, 172 S.E.2d 384 (1970) ("Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation.").

Further, the SCAWV has held that "[a] statute is open to construction only where the language used requires interpretation because of ambiguity which renders it susceptible of two or more constructions or of such doubtful or obscure meaning that reasonable minds might be uncertain or disagree as to its meaning." *Pratt & Whitney Engine Services v. Steager*, 239 W. Va. 833, 838, 806 S.E.2d 757, 762 (2017) (citation omitted). Therefore, the two-step inquiry requires courts to first consider whether the statute is plain, and then, only if the statute is found to be ambiguous, making it susceptible to two or more constructions, the court must construe that statute considering the intent and

8

purpose of the Legislature in enacting the statute. *See State v. Finley*, 2023 WL 6804936 at *5 (W. Va. Oct. 16, 2023).

### A. COVID-19 Jobs Protection Act Immunities

The COVID-19 Act, codified as West Virginia Code § 55-19-1 *et. seq.*, was enacted in response to the novel coronavirus pandemic, which forever impacted the nation starting in early 2020. The COVID-19 Act was made effective from its passage on March 11, 2021, and it "applies to any cause of action accruing on or after [January 1, 2020]." W. Va. Code § 55-19-9(a). The Legislature stated that it is the purpose of this article to:

> (1) Eliminate the liability of the citizens of West Virginia and all persons including individuals, health care providers, health care facilities, institutions of higher education, businesses, manufacturers, and all persons whomsoever, and to preclude all suits and claims against any persons for loss, damages, personal injuries, or death *arising from COVID-19.*
>
> (2) Provide assurances to businesses that reopening will not expose them to liability for a person's *exposure to COVID-19.*

W. Va. Code § 55-19-2(b) (emphasis added). The COVID-19 Act embodies a very broad immunity provision, which states:

> *[n]otwithstanding any law to the contrary*, except as provided by this article, there is *no claim* against any person, essential business, entity, health care facility, health care provider, first responder, or volunteer for loss, damage, physical injury, or death *arising from COVID-19,* from COVID-19 care, or from impacted care.

9

*Id.* at § 55-19-4 (emphasis added). Further, the Legislature defined "arising from COVID-19," "from COVID-19 care," and "from impacted care" as follows:

> (1) "Arising from COVID-19" means any act from which loss, damage, physical injury, or death is caused by a natural, direct, and uninterrupted consequence of the actual, alleged, or possible exposure to, or contraction of, COVID-19, including services, treatment, or other actions in response to COVID-19, and without which such loss, damage, physical injury, or death would not have occurred, including, but not limited to:
>
> *(A) Implementing policies and procedures designed to prevent or minimize the spread of COVID-19;*
>
> (B) Testing;
>
> (C) Monitoring, collecting, reporting, tracking, tracing, disclosing, or investigating COVID-19 exposure or other COVID-19-related information;
>
> (D) Using, designing, manufacturing, providing, donating, or servicing precautionary, diagnostic, collection, or other health equipment or supplies, such as personal protective equipment;
>
> (E) Closing or partially closing to prevent or minimize the spread of COVID-19;
>
> (F) Delaying or modifying the schedule or performance of any medical procedure;
>
> (G) Providing services or products in response to government appeal or repurposing operations to address an urgent need for personal protective equipment, sanitation products, or other products necessary to protect the public;
>
> (H) Providing services or products as essential business, health care facility, health care provider, first responder, or institution of higher education; or

10

(I) Actions taken in response to federal, state, or local orders, recommendations, or guidelines lawfully set forth in response to COVID-19.[5]

…

(3) "COVID-19 Care" means services provided by a health care facility or health care provider, regardless of location and whether or not those services were provided in-person or through telehealth or telemedicine, that relate to the testing for, diagnosis, prevention, or treatment of COVID-19, or the assessment, treatment, or care of an individual with a confirmed or suspected case of COVID-19.

…

(10) "Impacted care" means care offered, delayed, postponed, or otherwise adversely affected at a health care facility or from a health care provider that impacted the health care facility or health care provider's response to, or as a result of, COVID-19 or the COVID-19 emergency: *Provided*, That this provision does not prohibit claims that may otherwise be brought pursuant to § 55-7B-1 *et seq.* of this code so long as such claims for loss, damage, physical injury, or death are unrelated to COVID-19 or the COVID-19 emergency and the care provided.

---

[5] While not argued on appeal, this Court notes that section 55-19-3(1)(I) may arguably provide Salem immunity. Notably, on November 5, 2021, the Centers for Medicare and Medicaid Services ("CMS") implemented new requirements for its participating facilities. *See* 86 Fed. Reg. 61555 (2021). The CMS mandate required that "in order to receive Medicare and Medicaid funding, participating facilities must ensure that their staff—unless exempt for medical or religious reasons—are vaccinated against COVID-19." *Biden v. Missouri*, 595 U.S. 87, 89 (2022) (citation omitted). Under the CMS mandate, "[a] facility's failure to comply may lead to monetary penalties, denial of payment for new admissions, and ultimately termination of participation in the programs." *Id.* at 91 (citing 86 Fed. Reg. 61574). Salem, a West Virginia University facility, implemented its COVID-19 Vaccination Program in or about 2021, which arguably was in response to the CMS mandate, and Salem arguably was required to implement such a policy.

*Id.* at § 55-19-3 (emphasis added).

In interpreting the COVID-19 Act, the circuit court found that Salem met all the required elements for immunity under the Act. The circuit court found that Ms. Bond's claims of disability discrimination and failure to accommodate arise due to "a natural, direct, and uninterrupted consequence of" Salem's implementation of "policies and procedures designed to prevent or minimize the spread of COVID-19." Further, although Ms. Bond attempted to frame her case as a disability discrimination claim under the West Virginia Human Rights Act, the purpose of her suit was to recover damages for loss of employment as a direct result of Salem's COVID-19 Vaccination Program, which the circuit court found was expressly prohibited by the COVID-19 Act.

In deciphering the COVID-19 Act, the key focus in this case is on the "arising from COVID-19" language. The qualifying language under the definition of "arising from COVID-19" requires that "any act" be "caused by a [1] natural, [2] direct, and [3] uninterrupted consequence…" of COVID-19. W. Va. Code § 55-19-3(1). The COVID-19 Act further delineates that those acts that are natural, direct, and uninterrupted must also be premised on the "actual, alleged, or possible exposure to, or contraction of, COVID-19." *Id.* Next, the COVID-19 Act describes certain areas that would be covered, by stating, "including services, treatment, or other actions in response to COVID-19." *Id.* Even further, the COVID-19 Act sets forth certain examples as enumerated above, and as

12

relevant to this case, the example of "[i]mplementing policies and procedures designed to prevent or minimize the spread of COVID-19[.]" *Id.*

> The SCAWV has stated:
>
> The term includ[ing] in a statute is to be dealt with as a word of enlargement and indicative of a partial list:
>
> Black's Law Dictionary (9th ed. 2009) defines the term "include" as "to contain as a part of something," and says that the term "typically indicates a partial list…But some drafters use phrases such as including without limitation and including but not limited to—which mean the same thing."

*Wingett v. Challa*, 249 W. Va. 252, __, 895 S.E.2d 107, 113 (2023) (citations omitted).

Therefore, this Court concludes that the plain language of West Virginia Code §§ 55-19-3 and -4 is clear and unambiguous and, under West Virginia's laws of statutory construction, will not be interpreted by the courts, but simply applied. It is the Court's duty to apply the statute as written, even if it does not, for whatever reason, like or agree with the statute or its purpose. Here, the COVID-19 Act explicitly sets forth the exact situation that Ms. Bond is trying to sue Salem for: Salem implemented a policy that required all of its employees to be vaccinated by March 15, 2022, in response to COVID-19. This policy was implemented as a natural, direct, and uninterrupted consequence of COVID-19, and is premised on the possible exposure to or contraction of COVID-19. As previously noted, the COVID-19 Act sets forth a list of "examples" that businesses are protected from, and importantly, the Act specifically states, "[i]mplementing policies and

13

procedures designed to prevent or minimize the spread of COVID-19[.]" W. Va. Code § 55-19-3(1)(A).

Thus, this Court concludes, because Ms. Bond's claims are premised on Salem's implementation of a policy that is a natural, direct and uninterrupted consequence of COVID-19 and was designed to prevent or minimize the spread of COVID-19, Salem is immune from suit. However, for the reasons stated below, this Court reverses and remands to the circuit court for further consideration and analysis of the "intentional conduct with actual malice" exception under the COVID-19 Act, and its applicability in this case. *See* W. Va. Code § 55-19-7.

## B. Exceptions to COVID-19 Jobs Protection Act

Second, Ms. Bond argues that the circuit court erred by not finding that her case falls within the actual malice exception, found in West Virginia Code § 55-19-7 of the COVID-19 Act. The Act does not bar suits that involve actual malice, and here, Ms. Bond argues she sufficiently pled actual malice in her complaint. Ms. Bond asserts that Salem knew they were asking her to risk her health or lose her job, and even after presenting an adequate medical exemption, Salem denied her request and ultimately fired her.

In response, Salem argues that Ms. Bond's complaint does not allege any facts that reasonably can be construed as pleading actual malice. Moreover, Salem argues that the only time "malicious" is found in the complaint is in Ms. Bond's "Damages"

provision, which is a conclusory statement the court is free to ignore. *See Kopelman & Assoc., L.C. v. Collins*, 196 W. Va. 489, 493, 473 S.E.2d 910, 914 (1996). Even further, Salem asserts that Ms. Bond's complaint does not specifically allege that Salem had actual knowledge that her request for exemption was proper, yet Salem willfully, maliciously, and intentionally denied her request. Therefore, at most Ms. Bond's complaint establishes that Salem's application of its COVID-19 policy was arbitrary, but not that her medical exemption was denied with actual malice.

We disagree with Salem's arguments insofar as the circuit court failed to even consider the "actual malice" exception. The circuit court below made no ruling nor provided any analysis on the "intentional conduct with actual malice" exception.

"The trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief." Syl. Pt. 2, *Mountaineer Fire & Rescue Equip., LLC v. City National Bank of West Virginia*, 244 W. Va. 508, 854 S.E.2d 870 (2020). The SCAWV has consistently held that:

> to survive a motion under Rule 12(b)(6), a pleading need only outline the alleged occurrence which (if later proven to be a recognized legal or equitable claim), would justify some form of relief. "The complaint must set forth enough information to outline the elements of a claim or permit inferences to be drawn that these elements exist."

15

*Id.* at 521, 854 S.E.2d at 883 (citations omitted).

Notably, the COVID-19 Act provides two exceptions to the broad immunity provision listed above. *See* W. Va. Code §§ 55-19-6 and -7. First, the Act provides for an exception to immunity if it is a deliberate intent claim in the workers' compensation context. *See* W. Va. Code § 55-19-6.[6] More importantly, as relevant to this case, West Virginia Code § 55-19-7 provides: "[e]xcluding the provisions of § 55-19-5 and § 55-19-6 of this code, the limitations on liability provided in this article *shall not apply* to any person, or employee or agent thereof, who *engaged in intentional conduct with actual malice*." (Emphasis added).

---

[6] Specifically, this code section provides:

> Notwithstanding the provisions of this article and the further provisions of § 23-4-2 of this code which permits the filing of a civil cause of action against an employer for damages in excess of benefits received or receivable in a workers' compensation claim, if it is determined that the employer acted with deliberate intention, when a claim for workers' compensation benefits is awarded to an employee pursuant to § 23-1-1 et seq. of this code for a work-related injury, disease, or death caused by or arising from COVID-19 in the course of and resulting from covered employment, such claim for workers' compensation benefits shall be the sole and exclusive remedy for such injury, disease, or death and the immunity from suit provided under § 23-2-6 and § 23-2-6a of this code shall be and remain in full force and effect.

16

In enacting the COVID-19 Act the Legislature did not define "actual malice" or any definition of the phrase "intentional conduct with actual malice." However, this Court is cognizant of a case presently before the SCAWV, which hinges on the adoption of the *Hayseeds*[7] definition of actual malice under the COVID-19 Act.[8] *See Eldercare of Jackson Cnty., LLC v. Lambert*, No. 22-0362, 2022 WL 21796464 (Appellate Brief). Here, the parties do not argue what the proper definition of "actual malice" should be, therefore this Court finds it inappropriate to set forth a definition for the circuit court to base its decision on remand.

Therefore, this Court concludes that the circuit court erred in granting Salem's motion to dismiss based solely on immunity, without any consideration or analysis on the applicability of the "actual malice" exception. If in the first instance the circuit court determines that the actual malice exception is sufficiently pled, the court must, after

---

[7] In *Hayseeds*, the SCAWV stated that:

> [b]y "actual malice" we mean that the company actually knew that the policy holder's claim was proper, but willfully, maliciously and intentionally denied the claim. We intend this to be a bright line standard, highly susceptible to summary judgment for the defendant, such as exists in the law of libel and slander, or the West Virginia law of commercial arbitration….

*Hayseeds, Inc, v. State Farm Fire & Cas.*, 177 W. Va. 323, 330–31, 352 S.E.2d 73, 80–81 (1986).

[8] If the SCAWV makes a ruling while this case is on remand to the circuit court, the circuit court shall adopt the definition imposed by the SCAWV in making its decision.

argument by the parties, determine whether there is a genuine issue of material fact for the trier of fact to consider what would constitute "intentional conduct with actual malice" in the context of the COVID-19 Act.[9]

## IV. CONCLUSION

For the foregoing reasons, this Court reverses the Circuit Court of Harrison County's February 27, 2023, order and remands for further proceedings consistent with this opinion.

Reversed and Remanded.

---

[9] Further, if the circuit court finds on remand that Ms. Bond has sufficiently pled "intentional conduct with actual malice," and such exception is applicable, the question still remains whether Ms. Bond's perceived "disability" of adverse reactions to vaccinations in the past is an actual disability under the West Virginia Human Rights Act. Based on the parties' briefs and oral argument on appeal it was conceded for purposes of this appeal that Ms. Bond's medical condition meets the definition of "disability"; however, neither this Court nor the circuit court made a ruling on this matter. Therefore, on remand, the circuit court must determine whether Ms. Bond's alleged disability (i.e., adverse reactions to previous vaccinations) constitutes a disability under the West Virginia Human Rights Act. *See, e.g., Miller v. Charleston Area Medical Center*, 2023 WL 7549365 (S.D. W. Va. 2023).