736 S.E.2d 5

### FEROLETO STEEL COMPANY, INC., Petitioner

v.

Thomas A. OUGHTON, Assessor of Brooke County, County Commission of Brooke County and West Virginia State Tax Commissioner, Respondents.

No. 11–0666.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 5, 2012.

Decided Sept. 25, 2012.

**6**

Michael G. Gallaway, Esq., David R. Croft, Esq., Spilman Thomas & Battle, PLLC, Wheeling, WV and Dale W. Steager, Esq., Spilman Thomas & Battle, PLLC, Charleston, WV, for Petitioner.

Darrell V. McGraw, Jr., Esq., Attorney General, Charli Fulton, Esq., Senior Assistant Attorney General, Charleston, WV and David B. Cross, Esq., Brooke County Prosecuting Attorney, Wellsburg, WV, for Respondents.

BENJAMIN, Justice:

Petitioner Feroleto Steel Company, Inc. appeals the March 16, 2011, order of the Circuit Court of Brooke County that found that the petitioner's inventory of steel coils is not exempt from ad valorem property taxation under § 1c, article X of the West Virginia Constitution and W. Va.Code § 11–5–13 (1987). After considering the parties' arguments, the facts below, and the applicable constitutional and statutory language, this Court reverses the circuit court's order and holds that the inventory of steel coils at issue is exempt from ad valorem property taxation.

## I.  FACTS

The dispositive facts of this case are undisputed. The petitioner, Feroleto Steel Company, is located in Weirton, West Virginia. The petitioner's business is cutting large steel coils[1] into smaller widths as specified by the petitioner's customers. Specifically, the petitioner purchases coils of flat steel from out-of-state suppliers. These coils range in width from 36 inches to 54 inches and vary in gauge from .008 to .200 inches thick. The petitioner's five out-of-state customers place orders for the steel coils containing specifications and tolerances for how the steel is to be cut.[2] These specifications establish the gauge and the width to which the steel coils are to be cut in thousandths of an inch. Using a special machine, the petitioner cuts the steel coils to the custom measurements specified in the orders. Once the petitioner cuts the steel coils to a customer's specifications, the steel coil has a single use for a single customer. The petitioner then ships the cut steel coils to its five out-of-state customers.

Respondent Tax Commissioner, acting upon the recommendation of the Brooke County Assessor, also a respondent herein, denied the petitioner an exemption from ad valorem property taxation under W.Va. Const. art. X, § 1c and W. Va.Code § 11–5–13. The Tax Commissioner found that the cutting of the steel coils to an individual

1.  According to the respondent, one steel coil may weigh as much as 27,000 pounds.

2.  In their brief to this Court, the respondents provide an example of an order for coil that was .0117 inches thick and 6.764 inches wide. The tolerances for that order were +.005 and −.000 for width. The respondents explain that the +.005 means that the customer would accept material that was up to .005 inches wider than the order specification. The −.000 means that the customer would reject material that was narrower than the specification by any amount.

customer's specifications results in a product of different utility. The petitioner appealed the Tax Commissioner's decision to the Circuit Court of Brooke County. By order of March 16, 2011, the circuit court granted summary judgment on behalf of the respondents herein, the State Tax Commissioner, the Assessor of Brooke County, and the Brooke County Commission. The circuit court found:

> [T]here can be no exemption from *ad valorem* taxation under West Virginia Constitution, Article 10 1c because the product is one of a "different utility" when the steel coil is converted from a generic utility to a specific utility. This conversion creates a "different utility" by which the taxpayer loses any exemption under the Freeport Exemption.[3] (Footnote added.).

The petitioner now appeals the circuit court's summary judgment ruling to this Court.

## II. STANDARD OF REVIEW

■ It is axiomatic that this Court reviews a circuit court's grant of summary judgment *de novo*. *See* Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994) ("A circuit court's entry of summary judgment is reviewed *de novo*.").[4]

## III. DISCUSSION

■ The sole issue for this Court's determination is whether the petitioner's cutting of the steel coils into narrower steel coils, as determined by the specifications of the petitioner's customers, transforms the steel coils into products of new or different utility so that the steel coils are not exempt from ad valorem property taxation.[5]

3. W. Va. Const. art. X, § 1c is known as the Freeport Amendment.

4. The respondents assert that the petitioner has the burden of proving that its inventory of steel coils is exempt from ad valorem property taxation by clear and convincing evidence, *citing In re Tax Assessment of Woodlands*, 223 W.Va. 14, 672 S.E.2d 150 (2008), and *State ex rel. Prosecuting Attorney v. Bayer Corp.*, 223 W.Va. 146, 672 S.E.2d 282 (2008). This Court has never determined the standard by which a taxpayer must prove entitlement to an exemption from ad valorem property taxation under W. Va. Const. art.

In addressing the case before us, this Court first will review the applicable law. The exemption at issue exempts from ad valorem taxation certain personal property of inventory and warehouse goods. This exemption is found both in W. Va. Const. art. X, § 1c, and W. Va.Code § 11–5–13. According to W. Va. Const. art. X, § 1c, in applicable part:

> Notwithstanding any other provisions of this Constitution, tangible personal property which is moving in interstate commerce through or over the territory of the State of West Virginia ... shall not be deemed to have acquired a tax situs in West Virginia for purposes of ad valorem taxation and shall be exempt from such taxation, except as otherwise provided in this section. Such property shall not be deprived of such exemption because while in the warehouse the personal property is assembled, bound, joined, processed, disassembled, divided, cut, broken in bulk, relabeled, or repackaged for delivery out of state, unless such activity results in a new or different product, article, substance or commodity, or one of different utility.

The Legislature codified this constitutional provision in W. Va.Code § 11–5–13 (1987). In addition, in W. Va.Code § 11–5–13a(a) (1997), the Legislature clarified the intent of the establishment of the exemption from ad valorem property taxation as follows:

> (a) This section is intended to clarify the intent of the Legislature and the citizens in establishing the exemption from ad valorem property taxation granted by section one-c, article ten of the West Virginia Constitution and section thirteen [§ 11–5–13] of this article as it pertains to goods held in warehouse facilities in this state await-

X, § 1c, and W. Va.Code § 11–5–13, and we do not find it necessary to do so in order to decide the instant appeal.

5. As part of its assignment of error, the petitioner alleges that the circuit court's March 16, 2011, order that granted summary judgment in favor of the respondents does not include sufficient findings of fact and conclusions of law. The respondents argue to the contrary. Although this Court finds that the order contains an insufficient legal analysis, we are able to decide this case on the facts and the law.

ing shipment to a destination outside this State. This section codifies policies ap-. plied by agencies and departments of this State upon which persons have relied. It is the intent of the Legislature that the provisions of this section are to be liberally construed in favor of a person claiming exemption from tax pursuant to section one-c, article ten of the West Virginia Constitution, this section and section thirteen of this article.

(b) Goods which have been moved to a warehouse or storage facility, at which no substantial alteration takes place, to await shipment to a destination outside this State are deemed to be moving in interstate commerce over the territory of the State and therefore are exempt from ad valorem property tax and do not have a tax situs in West Virginia for purposes of ad valorem taxation.

The specific language from W.Va. Const. art. X, § 1c and W. Va.Code § 11–5–13 at issue in this case is that which says "[s]uch property shall not be deprived of such exemption because while in the warehouse the personal property is ... cut ... unless such activity results in a ... product ... of different utility." There is no dispute that the steel coils at issue are cut in the petitioner's warehouse. The issue is whether the cutting of the steel coils results in a product of different utility. As noted above, the circuit court found that the cutting of the steel coils results in a product of different utility because the steel coil is converted from a generic utility to a specific utility.

On appeal, the petitioner argues that the only thing the petitioner does in its warehouse is to cut the steel coils into narrow strips of steel, repackage the narrower strips of steel coils and ship them to the petitioner's five out-of-state customers. The petitioner does nothing else to the steel coils. Put simply, the steel coils arrive at the petitioner's warehouse as wide steel coils and they leave the warehouse as narrower steel coils. According to the petitioner, this fact coupled with the Legislature's intent that the tax exemption at issue be liberally construed in favor of a person claiming exemption from the tax compels the conclusion that the steel coils at issue should be exempted from ad valorem taxation.

The respondents' position is that the petitioner's cutting of steel coils into narrower steel coils creates a product of different utility. The respondents explain that upon arrival at the petitioner's plant, a large steel coil has a variety of potential uses. However, when the steel coils leave the petitioner's plant cut into customer-specified sizes, they have a specific use to a single customer and are no longer suitable for a variety of other uses. Therefore, the steel coils have become products of a different use, i.e., the custom-sized material from which each of the petitioner's customers will manufacture its product. The respondents base their argument on the following facts: the petitioners cut the steel to extremely precise customer specifications, such as to within thousandths of an inch; there are extremely low tolerances for deviations from those specifications which are also within thousandths of an inch and sometimes even smaller; the petitioner is certified by the International Organization for Standardization, which requires the petitioner to maintain strict quality control procedures;[6] the petitioner's customers cannot use the steel coils until the coils are cut to each individual customer's specifications; and the steel coils, once cut, have only a single use which is particular to the customer and the product that the customer manufactures from the steel coil.

After careful consideration of the parties' respective positions, this Court agrees with the argument proffered by the petitioner. First, as reasoned by the petitioner, the steel coils arrive at the petitioner's plant as steel coils, and they leave the plant as steel coils, only of a narrower size. While at the petitioner's plant, the composition of the steel is not changed. Further, the only thing the

6. According to the website of the International Organization for Standardization (ISO), the ISO is the world's largest developer of international standards. These standards, based on a global consensus, give state of the art specifications for products, services, and good practice. The ISO was founded in 1947 and since then has published more than 19,000 international standards covering almost all aspects of technology and business. See www.iso.org/iso/home/about.htm.

petitioner does to the steel coils at its plant is to cut the steel coils to a smaller size. The applicable constitutional and statutory language expressly provides that property shall not be deprived of the tax exemption based solely on the fact that the property is cut.

In addition, this Court believes that the respondents' construction of the phrase "of different utility" simply is too broad. The question arises that if the cutting of the steel coils in the instant case results in a product of new or different utility, under what circumstances would cutting property not so result? In other words, while the operative language clearly provides that personal property shall not be deprived of the ad valorem tax exemption solely because the taxpayer cuts the property while the property is in the taxpayer's warehouse, the respondents' broad construction of the applicable law threatens to render this provision of no effect. Such a result is contrary to our holding that "[a] cardinal rule of statutory construction is that significance and effect must, if possible, be given to every section, clause, word or part of the statute." Syl. pt. 3, *Meadows v. Wal–Mart Stores, Inc.*, 207 W.Va. 203, 530 S.E.2d 676 (1999). Therefore, this Court declines to read the operative constitutional and statutory language as broadly as urged by the respondents.

Finally, this Court finds the exemption of the inventory of steel coils from ad valorem property taxation consistent with the intent in establishing the exemption. According to W. Va.Code § 11–5–13a(a) (1997), in part, "[i]t is the intent of the Legislature that the provisions of this section are to be liberally construed in favor of a person claiming exemption from tax pursuant to section one-c, article ten of the West Virginia Constitution, this section and section thirteen of this article." Accordingly, this Court now holds that pursuant to W. Va.Code § 11–5–13a(a), it is the intent of the Legislature that the exemption from ad valorem taxation of certain personal property of inventory and warehouse goods provided for in W. Va. Const. art. X, § 1c; W. Va.Code § 11–5–13; and W. Va. Code § 11–5–13a(b); is to be liberally con-

strued in favor of a person claiming the exemption. In sum, this Court finds that the exemption of the petitioner's inventory of steel coils is more consistent with the applicable constitutional and statutory language as well as the intent in the establishment of the exemption.

## IV. CONCLUSION

For the reasons stated above, this Court finds that the petitioner's cutting of steel coils into narrower steel coils, as determined by the specifications of the petitioner's customers, does not result in a product of different utility for the purpose of the ad valorem property tax exemption. Therefore, we conclude that the petitioners' inventory of steel coils is exempt from ad valorem taxation under W. Va. Const. art. X, § 1c and W. Va.Code § 11–5–13. Because the Circuit Court of Brooke County ruled to the contrary in its March 16, 2011, order, that order is reversed.[7]

Reversed.

---

7. This Court wishes to emphasize that this decision is narrow and based only upon the specific statutory provision relied upon below and raised by the parties.