IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2013 Term

_____

No. 11-1398

_____

FILED

February 6, 2013

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

POPE PROPERTIES / CHARLESTON
LIMITED LIABILITY COMPANY,
Petitioner

v.

THE HONORABLE SALLIE ROBINSON,
IN HER CAPACITY AS KANAWHA COUNTY ASSESSOR,
Respondent

Appeal from the Circuit Court of Kanawha County
The Honorable Louis H. Bloom, Judge
Civil Action No. 11-AA-42

AFFIRMED

Submitted January 15, 2013
Filed: February 6, 2013

Mark A. Sadd, Esq.
James C. Stebbins, Esq.
Lewis Glasser Casey & Rollins, PLLC
Charleston, West Virginia
Counsel for the Petitioner

Karen Tracy McElhinny, Esq.
Shuman, McCuskey & Slicer, PLLC
Charleston, West Virginia
Stephen C. Sluss, Esq.
Kanawha County Assessor's Office
Charleston, West Virginia
Counsel for the Respondent

JUSTICE KETCHUM delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1. "'An assessment made by a board of review and equalization and approved by the circuit court will not be reversed when supported by substantial evidence unless plainly wrong.' Syl. pt. 1, *West Penn Power Co. v. Board of Review and Equalization*, 112 W.Va. 442, 164 S.E. 862 (1932)." Syl. pt. 3, *Western Pocahontas Properties v. County Commission of Wetzel County*, 189 W.Va. 322, 431 S.E.2d 661 (1993).

2. "A taxpayer challenging an assessor's tax assessment must prove by clear and convincing evidence that such tax assessment is erroneous." Syl. pt. 5, in part, *In re: Tax Assessment of Foster Foundation's Woodlands Retirement Community*, 223 W.Va. 14, 672 S.E.2d 150 (2008).

3. In cases where a taxpayer challenges an *ad valorem* tax assessment, a circuit court's conclusions of law are reviewed by this Court *de novo*.

4. Non-owner-occupied Class III condominium units, owned by a corporation and operated as income-producing property through the renting of the units as residential apartments, constitute commercial property with respect to the valuation and assessment of *ad valorem* taxes.

5. "Title 110, series 1P of the *West Virginia Code of State Rules* confers upon the State Tax Commissioner discretion in choosing and applying the most accurate method of appraising commercial and industrial properties. The exercise of such discretion will not be disturbed upon

judicial review absent a showing of abuse of discretion." Syl. pt. 5, *In re: Tax Assessment Against American Bituminous Power Partners*, 208 W.Va. 250, 539 S.E.2d 757 (2000).

6. "When a circuit court reviews an appraisal of commercial real property made for *ad valorem* taxation purposes, the court shall, in its final order, make findings of fact and conclusions of law addressing the assessing officer's consideration of the required appraisal factors set forth in *W.Va. C.S.R.* §§ 110-1P-2.1.1. to 2.1.4. (1991)." Syl. pt. 7, *Stone Brooke Limited Partnership v. Sisinni*, 224 W.Va. 691, 688 S.E.2d 300 (2009).

**Ketchum, Justice:**

This case is before this Court upon the appeal of Pope Properties / Charleston Limited Liability Company ("Pope Properties"), from the September 20, 2011, order of the Circuit Court of Kanawha County which affirmed the decision of the County Commission of Kanawha County sitting as the Board of Equalization and Review. At issue is the valuation and corresponding tax assessment of Pope Properties' 79 condominium units located in a complex known as Country Club Village Apartments. The Board of Equalization and Review upheld the determination of the Assessor that for *ad valorem* tax purposes for 2011, the 79 units should be valued as follows: $63,700 for each of Pope Properties' 16 one-bedroom units and $70,000 for each of its 63 two-bedroom units. Pope Properties contends that the valuations of the Assessor are incorrect and that, instead, the 79 units should be valued at $42,000 for each of the 16 one-bedroom units and $49,000 for each of the 63 two-bedroom units.

The underlying disagreement between Pope Properties and the Assessor concerns the Assessor's use of the market data (comparable sales) approach in determining the value of the units, rather than the income approach to valuation advocated by Pope Properties.

Upon careful review of the record-appendix, the briefs and argument of the parties, and relevant authorities, this Court is of the opinion that Pope Properties has failed to establish that the Assessor was erroneous by clear and convincing evidence. As discussed herein, although the Assessor was mistaken in concluding that the 79 units, considered individually, were non-

1

commercial in nature, that conclusion did not affect the validity of the Assessor's choice, or manner of application, of the market data approach in this case. Accordingly, the September 20, 2011, order of the circuit court is affirmed.

## I.

## Factual and Procedural Background

The complex known as Country Club Village Apartments, initially constructed in 1979, includes 102 condominiums, 79 of which were purchased by Pope Properties in the early 1990s. Since the purchase, Pope Properties has operated its condominiums, consisting of 16 one-bedroom units and 63 two-bedroom units, as income-producing rental property. The 79 units have never been owner-occupied or held out for sale. Throughout the years, the Assessor has valued the 79 units individually as Class III property. The rest of the condominiums in the complex, not belonging to Pope Properties, are owner-occupied.[1]

For tax year 2011, the Assessor, using the market data (comparable sales) approach, valued Pope Properties' 79 condominiums at $63,700 for each of its 16 one-bedroom units and $70,000 for each of its 63 two-bedroom units. Specifically, the Assessor looked at three recent sales of two owner-occupied condominium units within the same complex, Country Club Village Apartments. The sales, involving one and two-bedroom units, occurred between 2008 and 2010 and sold for $64,000, $70,000 and $78,000.

---

[1] For levy purposes, the 79 condominium units have been classified as Class III property, thus subjecting the units to higher tax assessments than in the case of Class II owner-occupied residential property.

Asserting that the valuations for tax year 2011 were substantially higher than the valuations for the previous year, Pope Properties filed an application for relief before the County Commission of Kanawha County sitting as the Board of Equalization and Review.

On February 22, 2011, the Board of Equalization and Review conducted an evidentiary hearing. Joseph Pope, a manager of Pope Properties, testified on behalf of the taxpayer that, for commercial lending purposes, the income approach to valuation, rather than the market approach, is used insofar as Pope Properties' units are financed in the aggregate, and consolidated profit and loss statements are considered. Following that testimony, Pope Properties called Stephen A. Holmes, a certified real estate appraiser. Holmes stated that the 79 units constituted commercial property which, using the income approach, should be valued for tax year 2011 at $42,000 for each of the 16 one-bedroom units and $49,000 for each of the 63 two-bedroom units.

Holmes testified that he considered the three traditional approaches to appraising real property, *i.e.*, cost, market data (comparable sales) and income. He rejected the cost approach on the basis that the Country Club Village Apartments was too old for that approach to be meaningful. Holmes also rejected the market data approach because the three sales relied on by the Assessor were owner-occupied units. In that regard, Holmes stated that it was improper for the Assessor to use the sale of Class II property in appraising Class III commercial parcels. Thus, according to Holmes, the income approach was the most appropriate method of appraising the 79 units, especially since Pope Properties had operated the units exclusively as income-producing units throughout the years.

3

Stephen Duffield, Chief Deputy Assessor, testified, however, that Pope Properties' 79 condominium units did not constitute commercial property when viewed as separate units rented to individuals. In any event, according to Duffield, the market data approach was the appropriate method to value the 79 units since the three comparable sales used by the Assessor were within the same condominium complex. With regard to the income approach advocated by Pope Properties, Duffield acknowledged:

> Q. And, Mr. Duffield, one thing I want to make clear for the record, you are not saying that you could not use the income approach if it were appropriate in a condominium situation. If it were deemed to be appropriate, you could use the income approach.
> A. If it were deemed to be appropriate, yes, I could use it.

Following the hearing, the Board of Equalization and Review issued a written decision upholding the Assessor's valuation of the 79 condominium units for tax year 2011. The decision stated that Pope Properties failed to prove by clear and convincing evidence: (1) that the Assessor abused her discretion in using the market data approach or (2) that the valuation of the units, thus determined, was incorrect.

Pope Properties appealed the decision to the Circuit Court of Kanawha County. *See*, *W.Va. Code*, 11-3-25 [1967] (authorizing an appeal to circuit court by a taxpayer claiming to be aggrieved by an erroneous assessment).[2] In its petition, Pope Properties alleged that the 79 condominium units

---

[2] *In re: Tax Assessment Against American Bituminous Power Partners*, 208 W.Va. 250, 255, 539 S.E.2d 757, 762 (2000), observes that judicial review by a circuit court of the decision of a board of equalization and review regarding a challenged tax assessment is limited to roughly the same scope permitted under the contested cases section of the State Administrative

are commercial parcels that should have been valued under the income approach to real estate appraisal.

The circuit court entered an order on September 20, 2011, affirming the decision of the County Commission sitting as the Board of Equalization and Review. The order stated that the Assessor, upon considering all three approaches to valuation, determined that the market data approach was the appropriate method to value the 79 condominium units. Specifically, the order stated:

> The Kanawha County Assessor had more than ample evidence that the market data approach was appropriate. The Assessor had the sales prices of nearly identical units in the very same building in unforced sales during an arms-length transaction between willing buyers and sellers to use in determining the value of Pope Properties' property. Therefore, the Court concludes that Pope Properties failed to demonstrate by clear and convincing evidence that the Kanawha County Assessor erroneously valued the subject 79 condominium units and that the Assessor properly exercised her discretion in using the market data approach to value said units.[3]

Pope Properties' appeal to this Court followed.

---

Procedures Act, *i.e.*, *W.Va. Code*, 29A-5-4(g) [1998].

[3] In so ruling, the circuit court found no merit in Pope Properties' assertion that the sales of the comparable units were inapplicable because they were Class II, owner-occupied property. The circuit court observed that the primary difference between Class II and Class III property is whether the property is or is not owner-occupied, which directly impacts the tax levy, rather than the value of the property. *See*, *W.Va. Code,* 11-8-5 [1961].

**II.**

**Standard of Review**

As stated in *Kline v. McCloud*, 174 W.Va. 369, 371, 326 S.E.2d 715, 717 (1984), this Court utilizes "a two-pronged inquiry" in reviewing tax assessment cases, *i.e.*, whether the evidence supports the findings below and whether there was an error of law.

It follows, therefore, that, in the absence of allegations of constitutional or statutory violations, appellate review of an assessment for *ad valorem* tax purposes is largely fact-driven. Syllabus point 3 of *Western Pocahontas Properties v. County Commission of Wetzel County*, 189 W.Va. 322, 431 S.E.2d 661 (1993), holds: "'An assessment made by a board of review and equalization and approved by the circuit court will not be reversed when supported by substantial evidence unless plainly wrong.' Syl. pt. 1, *West Penn Power Co. v. Board of Review and Equalization*, 112 W.Va. 442, 164 S.E. 862 (1932)." Further guidance in fact-driven assessment cases is found in syllabus point 5 of *In re: Tax Assessment of Foster Foundation's Woodlands Retirement Community*, 223 W.Va. 14, 672 S.E.2d 150 (2008), which states, in part: "A taxpayer challenging an assessor's tax assessment must prove by clear and convincing evidence that such tax assessment is erroneous." *In accord*, syl. pt. 2, *Century Aluminum of West Virginia v. Jackson County Commission*, 229 W.Va. 215, 728 S.E.2d 99 (2012) (indicating that the burden is on the taxpayer to demonstrate by clear and convincing evidence that the assessment is erroneous).

On the other hand, this Court has said, and we so hold, that in cases where a taxpayer challenges an *ad valorem* tax assessment, a circuit court's conclusions of law are reviewed by this

Court *de novo*.  Syl. pt. 1, *Mountain America v. Huffman*, 224 W.Va. 669, 687 S.E.2d 768 (2009),

*cert. denied*, 559 U.S. _ , 130 S.Ct. 2377, 176 L.Ed.2d 785 (2010).  *See also*, syl. pts. 1 and 2, *In re:*

*Tax Assessment of Foster Foundation's Woodlands Retirement Community*, *supra*.


## III.

## Discussion

According to Pope Properties, Country Club Village Apartments was converted decades ago

from ordinary fee simple ownership to a condominium form of ownership under the West Virginia

Unit Property Act, *W.Va. Code*, 36A-1-1 [1963], *et seq*.  The Act provides, in *W.Va. Code*, 36A-4-5

[1963], that:  "Units may be sold, conveyed, mortgaged, leased or otherwise dealt with in the same

manner as like dealings are conducted with respect to real property and interests therein."[4]  Pursuant

to *W.Va. Code*, 36A-6-1 [1963], the property can be removed from the provisions of the Act by

revocation.


With regard to assessments and taxes, *W.Va. Code*, 36A-7-1 [1963], of the Unit Property Act

provides:


> Each unit and its proportionate undivided interest in the common elements
> as determined by the declaration and any amendments thereof *shall be assessed and
> taxed for all purposes as a separate parcel of real estate* entirely independent of the
> building or property of which the unit is a part.  Neither the building, the property nor
> any of the common elements shall be assessed or taxed separately after the
> declaration and declaration plan are recorded, nor shall the same be subject to
> assessment or taxation, except as the units and their proportionate undivided interests

---

[4]  The term "unit" is defined in *W.Va. Code*, 36A-1-2(n) [1963], as "a part of the property designed or intended for any type of independent use[.]"

7

in the common elements are assessed and taxed pursuant to the provisions of this article.

(emphasis added).[5]

In the current matter, this Court finds merit in Pope Properties' assertion that the Assessor incorrectly determined the 79 condominium units to be non-commercial. Although the units constituted residences rented to individuals, they were owned by the corporate taxpayer, Pope Properties, and consistently operated as income-producing property. There is no dispute in the record that, since the purchase of the units by Pope Properties in the early 1990s, the units were never owner-occupied or held out for sale. Although the 79 units could be sold by Pope Properties separately, or in groups, in the future, the status of the units during tax year 2011 as Class III non-owner-occupied property remained unchanged.

_____

[5] The definition of "condominium" is not found in the Unit Property Act. Instead, it is found in the adjoining chapter, *W.Va. Code*, 36B-1-101 [1986], *et seq.*, known as the West Virginia Uniform Common Interest Ownership Act. In *W.Va. Code*, 36B-1-103(8) [1998], thereof, "condominium" is defined as:

> a common interest community in which portions of the real estate are designated for separate ownership and the remainder of the real estate is designated for common ownership solely by the owners of those portions. A common interest community is not a condominium unless the undivided interest in the common elements are vested in the unit owners.

The term "unit" is defined in *W.Va. Code*, 36B-1-103(33) [1998], as "a physical portion of the common interest community designated for separate ownership or occupancy[.]" Moreover, as in the Unit Property Act, the Uniform Common Interest Ownership Act includes statutes pertaining to the separate assessment and taxation of "each unit," *W.Va. Code*, 36B-1-105 [1986]; the application of "the law of real property," *W.Va. Code*, 36B-1-108 [1986]; and the ability to terminate the common interest community, *W.Va. Code*, 36B-2-118(a) [1986].

Moreover, the prior conversion of Country Club Village Apartments from ordinary fee simple ownership to a condominium form of ownership under the Unit Property Act is not dispositive. The units have never been anything to the taxpayer, Pope Properties, other than rental units in the nature of an apartment complex. The ownership of the 79 units as condominiums does not alter the fact that each unit has been a non-owner-occupied, income-producing parcel. The units are, therefore, commercial property. In the *West Virginia Code of State Rules*, "commercial property" is defined as meaning "income producing real property used primarily but not exclusively for the sale of goods or services, including but not limited to offices, warehouses, retail stores, apartment buildings, restaurants and motels." *W.Va. C.S.R.,* 110-1P-2.3.3. (1991).[6]

Consequently, this Court holds that non-owner-occupied Class III condominium units, owned by a corporation and operated as income-producing property through the renting of the units as residential apartments, constitute commercial property with respect to the valuation and assessment of *ad valorem* taxes.

However, the fact that the 79 condominium units owned by Pope Properties constituted commercial property in 2011 does not mandate that the units be valued under the income approach

---

[6] Although this Court concludes that the 79 units owned and operated by Pope Properties constituted commercial property for purposes of 2011 *ad valorem* taxation, we recognize that the units have both commercial and residential characteristics. As Pope Properties correctly states:

> Apartment buildings can be both "residential" and "commercial" to the extent that the apartments are leased to the people who reside there. [Pope Properties'] condominium apartments are no different in that they have always been income-producing, and [Pope Properties] has always leased them to other people as places to reside.

as a matter of law. The above definition of "commercial property" is found in Title 110 of the *West Virginia Code of State Rules* which sets forth legislative rules pertaining to taxation. Series 1P of Title 110 is entitled "Valuation of Commercial and Industrial Real and Personal Property for *Ad Valorem* Property Tax Purposes," and *W.Va. C.S.R.* 110-1P-2.2.1.(1991), states that, in determining an estimate of fair market value, three generally accepted approaches to value will be considered and used, where applicable: "(A) cost, (B) income, and (C) market data." *See*, *The Appraisal of Real Estate* 63 (American Institute of Real Estate Appraisers, 4th ed. 1964), discussing in detail the three standard approaches to valuation. Moreover, in *W.Va. C.S.R.* 110-1P- 2.1.1. to § 2.1.4. (1991), a number of additional factors are listed for consideration in the valuation of property used for commercial or industrial purposes.[7]

The selection and application of the cost, income or market data approach, as appropriate in the valuation of commercial property, are within the discretion of the assessor. *Stone Brooke Limited Partnership v. Sisinni*, 224 W.Va. 691, 701, 688 S.E.2d 300, 310 (2009). In that regard, syllabus point 5 of *In re: Tax Assessment Against American Bituminous Power Partners*, *supra*, holds:

> Title 110, series 1P of the *West Virginia Code of State Rules* confers upon the
> State Tax Commissioner discretion in choosing and applying the most accurate

---

[7] The factors listed in *W.Va. C.S.R.* 110-1P-2.1.1. to 2.1.4. (1991), include: the location, size, characteristics and condition of the property; the previous purchase price and ease of alienation; any methods of ascertaining value peculiar to the property; improvements to the land or improvements in the form of buildings or structures; and other considerations, such as topography and accessibility and the value of the property to its owner. Moreover, the factors include considerations suggestive of both the income and market data (comparable sales) approaches, *i.e.*, the recent sale of, or other transactions involving, comparable property, *W.Va. C.S.R.* 110-1P-2.1.1.6. (1991), and the income, if any, which the property actually produces and has produced within the next preceding three years, *W.Va. C.S.R.* 110-1P-2.1.1.9. (1991).

method of appraising commercial and industrial properties. The exercise of such discretion will not be disturbed upon judicial review absent a showing of abuse of discretion.

*See also*, 84 C.J.S. *Taxation* § 575 (2010) (Within limits of fairness, "assessors and taxing authority" have discretion in choosing and applying the most accurate method of appraising properties.).

*Stone Brooke* involved three consolidated appeals wherein the taxpayers challenged the valuation of their low income housing, multi-unit, apartment buildings. The assessors used the cost approach to determine the value of the properties for *ad valorem* tax purposes. The taxpayers maintained, however, that the income approach should have been used because that approach was the only appropriate method to ascertain the value of the subject properties, especially since the apartment buildings were within the federal Low Income Housing Tax Credits program.

This Court, in *Stone Brooke*, recognizing an assessor's discretion to choose and apply the most accurate method of appraising commercial property, expressed its reluctance to conclude that the income approach asserted by the taxpayers was the only appropriate approach to be used. Moreover, this Court determined that the assessors' cost approach valuations were supported by substantial evidence and, therefore, were not plainly wrong.

Nevertheless, although upholding the application of the cost approach, this Court in *Stone Brooke* reversed and remanded the cases, in part, for an analysis of whether the assessors properly considered the additional factors set forth in *W.Va. C.S.R.* 110-1P-2.1.1. to 2.1.4. (1991), for the

11

valuation of commercial real property. *See*, n. 7, *supra*. In that regard, to facilitate future appellate review, syllabus point 7 of *Stone Brooke* holds:

> When a circuit court reviews an appraisal of commercial real property made for *ad valorem* taxation purposes, the court shall, in its final order, make findings of fact and conclusions of law addressing the assessing officer's consideration of the required appraisal factors set forth in *W.Va. C.S.R.* §§ 110-1P-2.1.1. to 2.1.4. (1991).

In the case now before us, the circuit court's September 20, 2011, order contained findings of fact and conclusions of law and stated that the Assessor, upon considering all three approaches, selected the market data (comparable sales) approach as the appropriate method to value the 79 units. The order specifically stated: "The Assessor had the sales prices of nearly identical units in the very same building in unforced sales during an arms-length transaction between willing buyers and sellers to use in determining the value of Pope Properties' property." In addition, the order indicated that, based on the testimony before the Board, the Assessor considered the various approaches, "as well as other factors contained in *W.Va. C.S.R.* § 110-1P-2.1.1., before ultimately determining that the market data approach was the appropriate method to use to value the 79 condominiums."

Moreover, the circuit court recognized the provisions of *W.Va. Code*, 36A-7-1 [1963], of the Unit Property Act which require that each unit, and its proportionate undivided interest in the common elements, "be assessed and taxed for all purposes as a separate parcel of real estate entirely independent of the building or property of which the unit is a part." The Assessor's documents of record in this case show a separate listing, an identifying number, and a "2011 Assessed Value" for each of the 79 units, thus evidencing compliance with the statute.

12

The requirement that each unit be assessed and taxed as a separate parcel, however, does not mandate which of the three approaches, cost, income or market data (comparable sales), must be selected by an assessor in appraising commercial real property for *ad valorem* tax purposes. The discretion remains with the assessor, subject to the standards of review discussed above.[8] Here, as in *Stone Brooke*, this Court is of the opinion that the Assessor's approach to valuation was supported by substantial evidence and was not plainly wrong. Using the market data approach, the Assessor valued the 79 condominiums at $63,700 for each of its 16 one-bedroom units and $70,000 for each of its 63 two-bedroom units. The Assessor looked at three sales of two owner-occupied condominium units within the same complex, Country Club Village Apartments. The sales, involving one and two-bedroom units, of comparable age and size to the 79 units, occurred between 2008 and 2010 and sold for $64,000, $70,000 and $78,000. As explained by the circuit court, the Class II versus Class III distinction was not preclusive of the market data approach. *See*, n. 3, *supra*.

Fundamentally, in challenging an assessor's *ad valorem* tax valuation, the submission by the taxpayer of an alternative valuation is not enough. As this Court confirmed in syllabus point 9 of *Mountain America*, *supra*, there is a presumption that valuations for taxation purposes fixed by an assessor are correct. The taxpayer must prove that an error has been made. In this case, the circuit court found the valuation of Stephen A. Holmes, Pope Properties' expert appraiser, to be problematic. As reflected in the September 20, 2011, order, the circuit court noted that Holmes

---

[8] We have stated herein that Pope Properties is unwarranted in asserting that the income approach is the sole method for determining the value of its 79 condominium units. Similarly, the Assessor may not claim that the market data (comparable sales) approach is the sole method to be used. The appropriate method may change from time to time in varying circumstances. Thus, an assessor's duty to exercise sound discretion arises each tax year.

13

failed to provide the Board of Equalization and Review sufficient information to fully understand his income approach in valuing the 79 units. Moreover, the order stated:

> The only reason presented by Mr. Holmes as to why he "suspected" that the value of the owner-occupied condominium units would be different than the identical units that had been rental property is that "if you put all seventy-nine units on the market at the same time, I suspect that the value of the units individually would change." However, neither Pope Properties nor its retained appraiser presented any testimony suggesting that there is any statute or regulation that would have forced Pope Properties to sell all seventy-nine units as a collective unit, instead of separately.

The circuit court's conclusion in the latter regard is correct. As noted above, *W.Va. Code*, 36A-4-5 [1963], of the Unit Property Act states: "Units may be sold, conveyed, mortgaged, leased or otherwise dealt with in the same manner as like dealings are conducted with respect to real property and interests therein." Also, pursuant to *W.Va. Code*, 36A-6-1 [1963], the property can be removed from the provisions of the Act by revocation.

## IV.

### Conclusion

For the reasons expressed above, although the Assessor was mistaken in concluding that Pope Properties' 79 units were non-commercial in nature, that conclusion did not affect the validity of the Assessor's choice, or manner of application, of the market data approach in this case. In upholding the Assessor's valuation and affirming the decision of the County Commission sitting as

14

the Board of Equalization and Review, the Circuit Court of Kanawha County properly determined that Pope Properties failed to demonstrate by clear and convincing evidence that the valuations and corresponding assessments for tax year 2011 were erroneous.  Accordingly, the September 20, 2011, order of the circuit court is affirmed.

**Affirmed**.