IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2017 Term

_____

No. 16-0903

_____

FILED

**November 1, 2017**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

PRATT & WHITNEY ENGINE SERVICES,
Petitioner

v.

DALE W. STEAGER,
State Tax Commissioner of West Virginia,
Respondent

_____

Appeal from the Circuit Court of Harrison County
The Honorable John Lewis Marks, Jr., Judge
Civil Action No. 15-P-68-1

AFFIRMED

_____

Submitted: October 18, 2017
Filed: November 1, 2017

Herschel H. Rose, III, Esq.                    Patrick Morrisey, Esq.
Rose Law Office                                Attorney General
Charleston, West Virginia                      Sean Whelan, Esq.
Counsel for the Petitioner                     Assistant Attorney General
                                               L. Wayne Williams, Esq.
                                               Assistant Attorney General
                                               Charleston, West Virginia
                                               Counsel for the Respondent

JUSTICE KETCHUM delivered the Opinion of the Court.
CHIEF JUSTICE LOUGHRY dissents and reserves the right to file a dissenting Opinion.
JUSTICE WORKMAN dissents and reserves the right to file a dissenting Opinion.

SYLLABUS BY THE COURT

1. "In cases where a taxpayer challenges an *ad valorem* tax assessment, a circuit court's conclusions of law are reviewed by this Court *de novo*." Syllabus Point 3, *Pope Properties/Charleston Ltd. Liability Co. v. Robinson*, 230 W.Va. 382, 738 S.E.2d 546 (2013).

Justice Ketchum:

In this case we consider whether a large inventory of jet engine repair parts are exempt from *ad valorem* property taxation. The county assessor, state tax commissioner, and circuit court all considered this question and concluded that the repair parts are not exempt from *ad valorem* property taxation. After review, we agree with the circuit court's conclusion and, accordingly, affirm its order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Pratt & Whitney Engine Services ("Pratt") repairs jet engines at its facility in Bridgeport, West Virginia. It maintains a vast inventory of jet engine repair parts at its West Virginia facility—the parts at issue are listed on a 39-page single-spaced document and are valued at $7,438,639.52.

In January 2015, Pratt requested that the Harrison County Assessor conduct a review of whether the majority of its repair parts were exempt from *ad valorem* taxation.[1] Pratt argued that the repair parts were exempt from *ad valorem* taxation[2]

---

[1] We pause briefly to discuss Pratt's argument regarding the percentage of its repair parts that should be exempt from *ad valorem* taxation. Pratt's total worldwide sales for the period ending July 1, 2014, was $277,692,708. Only 1.696% ($4,709,280) of these sales were made to West Virginia customers. The circuit court described Pratt's argument as follows: "Using the allocation of 1.696% sales to West Virginia customers, [Pratt] argues that the inventory of spare parts valued at $7,438,639 by [the Harrison County Assessor] should be valued at $126,148 for *ad valorem* tax purposes for the 2015 TY." In essence, Pratt argued that because approximately 98.3% of its repair parts are

(continued . . .)

1

pursuant to the Freeport Amendment contained in the West Virginia Constitution. The Freeport Amendment exempts certain personal property of inventory and warehouse goods from *ad valorem* taxation. It provides:

> Notwithstanding any other provisions of this Constitution, tangible personal property which is moving in interstate commerce through or over the territory of the State of West Virginia, or which was consigned from a point of origin outside the State to a warehouse, public or private, within the State for storage in transit to a final destination outside the State, whether specified when transportation begins or afterward, but in any case specified timely for exempt status determination purposes, shall not be deemed to have acquired a tax situs in West Virginia for purposes of ad valorem taxation and shall be exempt from such taxation, except as otherwise provided in this section. Such property shall not be deprived of such exemption because while in the warehouse the personal property is assembled, bound, joined, processed, disassembled, divided, cut, broken in bulk, relabeled, or repackaged for delivery out of state, *unless such activity results in a new or different product, article, substance or commodity, or one of different utility*.

W.Va. Const. art. X, § 1c [1986] (emphasis added).

---

used in jet engines that are shipped to customers outside of West Virginia, 98.3% of the value of its repair parts inventory should be exempt from *ad valorem* taxation.

[2] The phrase "*ad valorem*" means, literally, "according to the value" and is used in taxation to designate an assessment of taxes against property, real or personal, at a certain rate upon its value. *Smith v. American Airlines, Inc.*, 606 So. 2d 618, 620 (Fla. 1992). The essential characteristic of an *ad valorem* tax is that the tax is levied according to the value of property as determined by an assessment or appraisal. *American Airlines, Inc. v. County of San Mateo*, 912 P.2d 1198 (Cal. 1996).

After conducting its review, the county assessor determined that the repair parts were not exempt from *ad valorem* taxation. The assessor explained its finding as follows:

> [O]ur review indicates that the parts in inventory are used in a manufacturing process that renders them an integral part of a jet engine. Clearly, the parts in a functioning jet engine have a different utility than the parts that are stocked on shelves and used in the repairs process. Given our review, we are of the opinion that the parts inventory located in Bridgeport and used by [Pratt] in its jet engine repairs process are not eligible for the Freeport exemption . . . as the use of such parts by [Pratt] . . . results in a product of different utility.

At Pratt's request, the county assessor certified Pratt's question to the Respondent State Tax Commissioner ("tax commissioner") for "review and issuance of a taxability ruling." The tax commissioner issued a detailed, seven-page decision which concluded that Pratt's repair parts were not exempt from *ad valorem* taxation. Pratt appealed the tax commissioner's administrative decision to the circuit court.

The circuit court held a bench trial on April 29, 2016.[3] The sole witness at the bench trial was Pratt's manager of supply chain logistics, Timothy H. Tucker. Mr. Tucker testified that Pratt buys the repair parts from its parent company, Pratt Whitney

---

[3] Prior to the bench trial, the parties and the circuit court took part in a "site walk" at Pratt's Bridgeport facility. During the site walk, the parties observed 1) several jet engines that were being repaired, which were approximately six to seven feet in length; 2) a jet engine being tested in a wind tunnel; and 3) the storage space where "several grommets" and other repair parts were maintained.

3

Canada. He stated that Pratt uses the repair parts when manufacturing, overhauling, and repairing jet engines. All of the repair parts are shipped to the Bridgeport facility from locations outside of West Virginia. The majority of the repair parts stay in the Bridgeport facility from "zero to three months." Mr. Tucker testified that the repair parts that are used retain their characteristics and identity during their installation into a jet engine. For example, Mr. Tucker was asked about one particular repair part, a counterweight, and had the following exchange with counsel for Pratt:

> Q. So from the inception of manufacture, to the time it takes off and flying people hither and yon, it is a counterweight coming in, it's a counterweight going out?
>
> A. That's correct.

During cross-examination, Mr. Tucker discussed the purpose and utility of a jet engine, and the purpose and utility of the individual repair parts:

> Q. What's the purpose of a jet engine?
>
> A. It is to provide thrust.
>
> Q. To fly an airplane?
>
> A. To fly an airplane, a helicopter, anything that you want to put it on, whether it's a jet engine, in general, would have many uses.
>
> Q. And then you install all of these parts as needed in the repair of jet engines?
>
> A. That's correct.

4

Q.   Could you tell me what is the – is a grommet vein retaining[4] the same product as a jet engine?

A.   It is a component of a jet engine.

Q.   But the jet engine, is that the same as a grommet?

A.   It would not be the same, as far as a part number goes, no.

Q.   But it's a different product?

A.   It is – it's a piece of that product, yes.  It's used in building that product.  You can't have the jet engine without it.

Q.   Does the jet engine have the same utility as a grommet?

A.   The jet engine itself would not have the same utility as the grommet, but the jet engine wouldn't exist without what the grommet does, if that makes sense.

Q.   It does.  Is a compressor the same product as a jet engine?

A.   It's a – it would not be the same product itself.  It would have a different part number, but it is a – you can't have a jet engine without it.

Q.   And all of these parts on this 39-page list [of Pratt repair parts] would be components of a jet engine, correct?

A.   That's correct.

_____

[4] The circuit court's order notes that a "grommet" is "a reinforced eyelet . . . through which a fastener may be passed."

5

Q.      At some point?

A.      Correct.

Q.      But the jet engine is a different product than all these items on the 39-page list?

A.      Yes.   The items on the 39-page list, you couldn't necessarily make a jet engine out of even the sum of those yet.

Q.      So a jet engine is different than a collection of grommets, and flywheels, and compressor blades?

A.      In their individual states, yes.

Following the bench trial, the circuit court issued a fifteen-page order affirming the tax commissioner's ruling that Pratt's inventory of repair parts was not exempt from *ad valorem* taxation pursuant to the Freeport Amendment.  In so ruling, the circuit court noted that Mr. Tucker testified that "a jet engine is a new and different product than the sum of the component parts installed in the jet engine.  Since the activities of [Pratt] result in a fully operational jet engine which is a new and different product than the individual repair parts, [Pratt] falls outside the parameters of the Freeport Amendment."  The circuit court's order also noted that Mr. Tucker testified that a jet engine has a different utility than the individual repair parts.  Following entry of the circuit court's order on August 24, 2016, Pratt filed the present appeal with this Court.

## II. STANDARD OF REVIEW

Pratt appeals the circuit court's order affirming the tax commissioner's ruling which concluded that the repair parts were not exempt from *ad valorem* taxation

6

pursuant to the Freeport Amendment. "In cases where a taxpayer challenges an *ad valorem* tax assessment, a circuit court's conclusions of law are reviewed by this Court *de novo*." Syllabus Point 3, *Pope Properties/Charleston Ltd. Liability Co. v. Robinson*, 230 W.Va. 382, 738 S.E.2d 546 (2013). To the extent Pratt challenges the circuit court's factual findings, our review is set forth in Syllabus Point 2 of *Walker v. W.Va. Ethics Comm'n*, 201 W.Va. 108, 492 S.E.2d 167 (1997):

> In reviewing challenges to the findings and conclusions of the circuit court . . . we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

We now turn to the parties' arguments.

### III. ANALYSIS

There are three main arguments raised in this appeal.[5] First, Pratt argues the repair parts are exempt from *ad valorem* taxation under the Freeport Amendment

---

[5] Pratt's brief to this Court begins with a list of ten assignments of error. However, the brief does not address each of these assignments of error individually under separate headings. Instead, the discussion section of the brief is only organized under the generic heading "Argument." For purposes of our discussion, we group Pratt's arguments into the three main categories set forth in our "Analysis." Pursuant to Rule 10 of the Rules of Appellate Procedure, a brief to this Court must contain "an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on, *under headings that correspond with the assignments of error*." (Emphasis added). "This Court has previously adhered to the rule that although we liberally construe briefs in determining issues presented for review, issues which are . . . mentioned only in passing but are not supported with pertinent authority, are not considered on appeal." *State v. Gray*, 217 W.Va. 591, 600, 619 S.E.2d 104, 113 (2005) (citation and internal quotation omitted).

because the repair parts do not become a new product, or a product with a different utility during the repair process. Next, it asserts that the inventory of repair parts are exempt from *ad valorem* taxation because they are "at all times moving in interstate commerce through or over . . . West Virginia." Finally, Pratt maintains the circuit court erred by failing to liberally construe the Freeport Amendment in its favor.

### A. New Product/Different Utility

We begin with an examination of the Freeport Amendment. In addition to the constitutional amendment contained in W.Va. Const. art. X, § 1c, the Freeport Amendment is codified in W.Va. Code § 11-5-13 [1987], which provides, in part:

> (a) Tangible personal property which is moving in interstate commerce through or over the territory of the state of West Virginia, or which was consigned from a point of origin outside the state to a warehouse, public or private, within the state for storage in transit to a final destination outside the state, whether specified when transportation begins or afterward, but in any case specified timely for exempt status determination purposes, shall not be deemed to have acquired a tax situs in West Virginia for purposes of ad valorem taxation and shall be exempt from such taxation, except as otherwise provided herein.
>
> (b) Such property shall not be deprived of such exemption because while in the warehouse the personal property is assembled, bound, joined, processed, disassembled, divided, cut, broken in bulk, relabeled, or repackaged for delivery out of state, unless such activity results in a new or different product, article, substance or commodity, or one of different utility.

Further, W.Va. Code § 11-5-13a [1997] addresses the purpose of the tax exemption contained in the Freeport Amendment as follows:

8

(a) This section is intended to clarify the intent of the Legislature and the citizens in establishing the exemption from ad valorem property taxation granted by section one-c, article ten of the West Virginia constitution and section thirteen of this article as it pertains to goods held in warehouse facilities in this state awaiting shipment to a destination outside this state. This section codifies policies applied by agencies and departments of this state upon which persons have relied. It is the intent of the Legislature that the provisions of this section are to be liberally construed in favor of a person claiming exemption from tax pursuant to section one-c, article ten of the West Virginia constitution, this section and section thirteen of this article.

(b) Goods which have been moved to a warehouse or storage facility, at which no substantial alteration takes place, to await shipment to a destination outside this state are deemed to be moving in interstate commerce over the territory of the state and therefore are exempt from ad valorem property tax and do not have a tax situs in West Virginia for purposes of ad valorem taxation.

The main issue in this appeal concerns the following language contained in the Freeport Amendment:

Such property shall not be deprived of such exemption because while in the warehouse the personal property is assembled, bound, joined, processed, disassembled, divided, cut, broken in bulk, relabeled, or repackaged for delivery out of state, *unless such activity results in a new or different product, article, substance or commodity, or one of different utility.*

(Emphasis added).

The issue is whether Pratt's repair parts are used to create a new product or a product with a different utility. The county assessor, tax commissioner, and circuit court all analyzed this issue and concluded that Pratt was not entitled to the Freeport

9

exemption because its inventory of repair parts are used to create a product with a different utility, *i.e.*, a functioning jet engine.

On appeal, Pratt argues that its inventory of repair parts should be exempt from *ad valorem* taxation under the Freeport Amendment. It argues that these repair parts do not "change their character in the course of being assembled at Bridgeport, become a new or different product while in the [Pratt] facility or become a product with a different utility." Instead, according to Pratt, its repair parts are individual components of a jet engine prior to being installed, and they continue to be individual components of a jet engine after being installed.

Conversely, the tax commissioner argues that the Freeport Amendment does not apply to Pratt's inventory of repair parts. According to the tax commissioner, "the act of installing a repair part, such as a compressor, into a broken jet engine results in a new or different product and in a product with a different utility." The tax commissioner emphasizes that the lone witness before the circuit court, a Pratt employee, testified that a jet engine is a different product and has a different utility than the individual repair parts.

Our resolution of this issue requires us to examine the Freeport Amendment contained in the West Virginia Constitution. "Questions of constitutional construction are in the main governed by the same general rules applied in statutory construction." Syllabus Point 1, *Winkler v. State School Bldg. Auth.*, 189 W.Va. 748, 434 S.E.2d 420 (1993). This Court has held that in deciding the meaning of a statutory provision, "[w]e

10

look first to the statute's language. If the text, given its plain meaning, answers the interpretive question, the language must prevail and further inquiry is foreclosed." *Appalachian Power Co. v. State Tax Dep't of West Virginia*, 195 W.Va. 573, 587, 466 S.E.2d 424, 438 (1995); *see also* Syllabus Point 2, *Crockett v. Andrews*, 153 W.Va. 714, 172 S.E.2d 384 (1970) ("Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation."); and Syllabus Point 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951) ("A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect.").

Additionally, this Court has held that "[a] statute is open to construction only where the language used requires interpretation because of ambiguity which renders it susceptible of two or more constructions or of such doubtful or obscure meaning that reasonable minds might be uncertain or disagree as to its meaning." *Sizemore v. State Farm Gen. Ins. Co.*, 202 W.Va. 591, 596, 505 S.E.2d 654, 659 (1998) (internal quotations and citation omitted). With these rules of construction in mind, we turn to the Freeport Amendment.

As an initial matter, we conclude that the Freeport Amendment is unambiguous. Based on the plain language of the Freeport Amendment, and its enacting statutes, the tax exemption does not apply if Pratt's installation of its repair parts into a jet engine "results in a new or different product, article, substance or commodity, or one of different utility." The undisputed facts of this matter are that Pratt stores a large number

11

of repair parts at its Bridgeport facility. It installs these parts into malfunctioning jet engines at the Bridgeport facility. The end result of this process is a fully functional jet engine.

As noted by the circuit court, Mr. Tucker, a Pratt employee who was the lone witness at the bench trial, stated that a jet engine is a different product than the individual repair parts. In fact, Mr. Tucker testified that all of the repair parts "on the 39-page list, you couldn't necessarily make a jet engine out of even the sum of those yet." Further, Mr. Tucker testified that a jet engine does not have the same utility as an individual repair part. Because Mr. Tucker testified that a repaired, functional jet engine is a different product with a different utility than the individual repair parts, we agree with the circuit court's conclusion that the repair parts are not exempt from *ad valorem* taxation pursuant to the Freeport Amendment.

The only previous case from this Court analyzing the Freeport Amendment supports our conclusion. In *Feroleto Steel Co. v. Oughton*, 230 W.Va. 5, 7, 736 S.E.2d 5, 7 (2012), this Court considered whether a business that cut "steel coils into narrower steel coils . . . transforms the steel coils into products of new or different utility so that the steel coils are not exempt from *ad valorem* property taxation." The Court determined that the taxpayer was entitled to the Freeport exemption in *Feroleto* because the cutting of the steel coils into narrower steel coils did not create a new product or a product with a different utility. In so ruling the Court relied on the fact that "the steel coils arrive at the petitioner's plant as steel coils, and they leave the plant as steel coils, only of a narrower

size. While at the petitioner's plant, the composition of the steel is not changed." 230 W.Va. at 8, 736 S.E.2d at 8. In the present case, the repair parts arrive at Pratt's facility as individual parts. The individual repair parts are stored in Pratt's facility for an average of "zero to three months." Finally, the parts are used in a manufacturing process to overhaul or repair a jet engine. The individual repair parts leave the facility as components of a functional jet engine—a new product with a different utility than the individual repair parts.

The Legislature has made it clear that the purpose of the Freeport Amendment is to exempt "[g]oods which have been moved to a warehouse or storage facility, at which no substantial alteration takes place, to await shipment to a destination outside this state" from *ad valorem* property tax. *See* W.Va. Code § 11-5-13a. Thus, one of the purposes of the Freeport Amendment is to promote the warehousing industry in West Virginia. It is clear that Pratt is not engaged in the warehousing business. Pratt buys the repair parts from an out-of-state vendor. It stores these parts until they are needed in its engine repair process. Finally, it installs these repair parts into a malfunctioning jet engine, producing a new product, a functioning jet engine, which has a separate and distinct utility from the individual repair parts.

Based on the foregoing, we conclude that the circuit court did not err by affirming the tax commissioner's order. We agree with the circuit court's conclusion that the repair parts are not exempt from *ad valorem* taxation under the Freeport Amendment

13

because they are used in the repair process at Pratt's facility to create a product with a different utility.

## B. Interstate Commerce

Pratt next argues that its repair parts are goods moving through interstate commerce and should be exempt from *ad valorem* taxation pursuant to the first sentence of the Freeport Amendment, which provides:

> Notwithstanding any other provisions of this Constitution, tangible personal property which is moving in interstate commerce through or over the territory of the State of West Virginia, or which was consigned from a point of origin outside the State to a warehouse, public or private, within the State for storage in transit to a final destination outside the State, whether specified when transportation begins or afterward, but in any case specified timely for exempt status determination purposes, shall not be deemed to have acquired a tax situs in West Virginia for purposes of ad valorem taxation and shall be exempt from such taxation, except as otherwise provided in this section.

Both the circuit court and the state tax commissioner rejected Pratt's argument that its inventory of repair parts should be exempt from *ad valorem* taxation under the first sentence of the Freeport Amendment. The circuit court explained its rationale for rejecting this argument as follows:

> The 39-page list of inventory repair parts does not represent goods moving in interstate commerce. The situs of the transaction is West Virginia under the facts of this case. Pratt purchased an inventory of repair parts for use in [its] jet engine repair business in Bridgeport, West Virginia. A customer will ship a jet engine in need of repairs to Bridgeport for Pratt to repair and recondition as necessary. According to Mr. Tucker's testimony, the repair parts are used by Pratt in Bridgeport to repair jet engines. After a

14

grommet or compressor is installed on the engine and the jet engine once again becomes operational, the jet engine is returned to the customer for use in the field. The 39-page list of repair parts is not moving in interstate commerce any more than the tires held in inventory by Firestone or Goodyear would be moving in interstate commerce.

Similarly, in the tax commissioner's ruling denying Pratt's request for an exemption under the Freeport Amendment, it noted:

> The inventories maintained by Pratt consist of parts to be used or consumed in the provision of its aircraft engine repair service, not of goods or merchandise that merely reside here temporarily while in transit. The Freeport Amendment was never intended to exempt the ordinary inventories of tangible personal property kept on hand for such purposes. The goods in question are not in transit – they are used or consumed in the provision of a service which is performed entirely with the State of West Virginia.

We agree with the rationale set forth by the circuit court and the tax commissioner. The plain language of the Freeport Amendment and its enacting statutes provide a straightforward statement of its application: the tax exemption applies to property or goods delivered "from a point of origin outside the State to a warehouse, public or private, within the State *for storage in transit to a final destination outside the State*." (Emphasis added).

Pratt's inventory of repair parts are purchased from out-of-state and stored in its West Virginia facility until needed to overhaul or repair a malfunctioning jet engine. Once a customer sends a malfunctioning jet engine to the West Virginia facility, the repair parts are used in the manufacturing process that occurs in West Virginia, resulting in the repair parts becoming an integral part of a functioning jet engine. Pratt's

15

argument that its inventory of parts are simply moving through interstate commerce stretches the Freeport Amendment far beyond its plain language. If this Court adopted Pratt's argument, we would potentially be extending the Freeport Amendment to all manufacturing businesses that purchase goods from outside of the state for use in a manufacturing process that occurs in West Virginia, and results in a finished product being delivered to an out-of-state customer. This expansion of the Freeport Amendment is not supported by its plain language or by its enacting statutes. In fact, the second sentence of the Freeport Amendment makes it abundantly clear that goods which are stored in West Virginia and used to create a new product or a product with a different utility do not qualify for the *ad valorem* tax exemption. Plainly, Pratt's repair parts were not brought into West Virginia simply "for storage in transit to a final destination outside the State."

Based on the foregoing, we conclude that the circuit court did not err by rejecting Pratt's argument that its repair goods were exempt from *ad valorem* taxation pursuant to the first sentence of the Freeport Amendment.[6]

---

[6] Pratt's argument that its repair parts are exempt under the first sentence of the Freeport Amendment also includes an assertion that its repair parts are exempt from taxation under the Commerce Clause. U.S. Const. art. 1, § 8, cl. 3 (Congress shall have the power to "regulate Commerce with foreign Nations, and among the several States."). We disagree. We need not linger on this issue because of our determination that the repair parts at issue are not merely moving through interstate commerce, rather, the inventory of repair parts are purchased by a West Virginia company and stored at its West Virginia facility for eventual use in its manufacturing process that occurs in West

(continued . . .)

## C. Liberal Construction

Finally, Pratt argues that the circuit court "erred in failing to effectively construe the Freeport [A]mendment liberally in favor of the taxpayer seeking the exemption, in violation of the specific mandate of the West Virginia legislature" and in violation of this Court's ruling in *Feroleto Steel*. The tax commissioner agrees with Pratt that the Freeport Amendment is to be liberally construed in favor of the taxpayer seeking the exemption. However, the tax commissioner disagrees with Pratt's assertion that the circuit court failed to liberally construe the Freeport Amendment in Pratt's favor.

West Virginia Code § 11-5-13a(a) provides, in part, "[i]t is the intent of the Legislature that the provisions of this section are to be liberally construed in favor of a person claiming exemption from tax." Similarly, in Syllabus Point 2 of *Feroleto Steel*,

---

Virginia. Assuming *arguendo* that the repair parts were simply passing through West Virginia in interstate commerce, our analysis would focus on the *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274 (1977), four-part test. Under *Complete Auto*, a state tax imposed on interstate commerce is constitutional if it "is applied to an activity with substantial nexus with the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided." *Id.* at 279. There has been no showing that the tax on Pratt's inventory of repair parts violates any of these factors. As the tax commissioner notes, "property physically present in West Virginia [such as Pratt's inventory of repair parts] has a sufficient nexus for *ad valorem* property tax purposes." The tax commissioner also asserts that the taxes assessed by the county assessor are used to provide essential county services. Further, the tax commissioner argues that there has been no showing that the taxes are assessed in a discriminatory manner. Finally, the tax commissioner states that there has been no showing that the county assessor has failed to properly apportion the *ad valorem* taxes. We agree with the tax commissioner and find Pratt has failed to satisfy the four-factor *Complete Auto* test.

17

this Court held: "Pursuant to W.Va. Code § 11-5-13a(a), it is the intent of the Legislature that the exemption from *ad valorem* taxation of certain personal property of inventory and warehouse goods provided for in W.Va. Const. art. X, § 1c; W.Va. Code § 11-5-13; and W.Va. Code § 11-5-13a(b); is to be liberally construed in favor of a person claiming the exemption."

The circuit court's order affirming the tax commissioner's ruling recognizes that the Freeport Amendment is to be liberally construed in favor of the taxpayer. In fact, the circuit court's order discusses W.Va. Code § 11-5-13a numerous times, including the following statement contained under its "conclusions of law" heading: "According to W.Va. Code § 11-5-13a(a), the Freeport Exemption is to be liberally construed."

Additionally, after recognizing that it was required to liberally construe the Freeport Amendment in Pratt's favor, the circuit court explained why it nevertheless determined that the repair parts were not exempt from *ad valorem* taxation under the Freeport Amendment. The circuit court's order provides:

> [Pratt] argues that the Freeport Amendment should be liberally construed by the Courts. [Pratt] is correct as an abstract statement of law. *See* W.Va. Code § 11-5-13a(a). However, Mr. Tucker's testimony was clear and consistent. A jet engine is a new and different product than a grommet or a counterweight. A jet engine has a different utility than a compressor. *Liberal construction should not be cited as a basis to ignore the undisputed testimony of Pratt's own witness.* If the activities of any taxpayer results in a new or different product or a product with a different utility, then the tangible personal property at issue does not meet the language of the Freeport Amendment. In the case before the Circuit

18

Court today, it is clear that [Pratt's] activities do not fall within the parameters of the Freeport Amendment.

(Emphasis added).

Based on this clear statement, the circuit court recognized that the Freeport Amendment is to be liberally construed and it considered Pratt's argument under this standard. The circuit court reasoned that, despite the liberal construction standard, Pratt's argument failed based on the undisputed testimony of the only witness who testified during the bench trial. This witness, a Pratt employee, testified that the manufacturing process in which the repair parts are used results in a new product with a different utility—a functional jet engine.

We agree with the circuit court's reasoning and conclusion. The circuit court recognized that the Freeport Amendment is to be liberally construed, considered Pratt's argument under this standard, and explained its reasons for ruling against Pratt despite this standard. The testimony of the sole witness demonstrated clearly and unequivocally that the inventory of repair parts do not fall within the Freeport Amendment exemption.

Based on the foregoing, we find that the circuit court did not err "in failing to effectively construe the Freeport [A]mendment liberally" in Pratt's favor.[7]

---

[7] Pratt also argues that the circuit court failed to apply the proper standard of proof in this case. Pratt asserts that the preponderance of the evidence standard should be applied to taxpayer's seeking an exemption under the Freeport Amendment. We

(continued . . .)

19

## IV. CONCLUSION

The circuit court's August 24, 2016, order is affirmed.

Affirmed.

---

disagree. In Syllabus Point 5, in part, of *In re Tax Assessment of Foster Foundation's Woodlands Retirement Community*, 223 W.Va. 14, 672 S.E.2d 150 (2008), this Court held: "A taxpayer challenging an assessor's tax assessment must prove by clear and convincing evidence that such tax assessment is erroneous."